Harold GRADSKY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 23783.

United States Court of Appeals Fifth Circuit.

Feb. 28, 1967.

Herbert Brownell, W. Thomas Margetts, III, Lord, Day & Lord, New York City, James Lee Rankin, Jr., New York City, of counsel, for appellant.

Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami, Fla., Mahlon M. Frankhauser, Sp. Asst. Atty., Washington, D. C., William A. Meadows, Jr., U. S. Atty., Miami, Fla., David B. Bliss, Sp. Counsel, P. Dennis Belman, Atty., Div. of Trading and Markets, S. E. C., Washington, D. C., of counsel, for appellee.

Before TUTTLE, Chief Judge, and BELL and GOLDBERG, Circuit Judges.

TUTTLE, Chief Judge:

This is an appeal from judgment of conviction and sentence of appellant Gradsky on three counts of an indictment charging him and others with numerous counts of mail fraud,[1] fraud in the sale of securities,[2] and conspiracy to violate the two statutes.[3]

Because of the disposition we make of the case, we deal with only three assignments of error: (1) insufficiency of the evidence to warrant submission of the cases to the jury; (2) refusal of the trial court to grant motion for mistrial after the prosecuting officer allegedly "vouched" for the credibility of two co-conspirator-witnesses for the government; and (3) the denial by the trial court of a motion for severance.

We conclude that if the jury was entitled to credit the testimony of the two co-conspirators, Zane and Gilmore, as they would be under proper circumstances, the evidence against Gradsky was sufficient to permit a finding by the jury that he was guilty beyond a reasonable doubt.

The factual background necessary for an understanding of this court's decision can be briefly stated: The indictment covered the period from June 1, 1957, to May 15, 1961. On June 1, 1957, Harold Gradsky owned four corporations in Miami, Florida—Federal Finance, Inc., an automobile finance company; Insured Rentals, Inc., a car leasing company, and two small loan companies, All-State Loan Company and Modern Loan Company. At about this time, he began to solicit investments from the public in Federal Finance, Inc., by occasionally advertising in the papers that Federal could pay 15% interest on its notes. Gradsky told investors Federal could pay this high rate of interest because it earned 36% on its investment in finance paper and that small loan receivable accounts or automobile paper would be assigned as security for loans made by the public investors.

Witnesses testified to having made loans based on these representations.

1. 15 U.S.C.A. § 77q(a).

2. 18 U.S.C.A. § 1341.

3. 18 U.S.C.A. § 371.

While there was evidence that there was some business conducted by the several companies, the proof warranted submission to the jury of the question whether Gradsky had devised a scheme to defraud in that neither the true nature of, nor the noticeable lack of success of the businesses was truly represented to the public.

The jury could believe that prior to, and in, March, 1959, the companies were unsuccessful and were in a failing condition. At that time there was $134,000 owed to members of the public who had made loans to Federal, based on the representations made by Gradsky. The jury could believe that at this time there was practically no security available for the holders of the $134,000 in notes.

In January, 1959, co-conspirator Leon Gradsky,[4] a brother of Harold's, suggested to self-confessed co-conspirators Zane and Gilmore that they organize a company to engage in an operation similar to Federal. They organized Inter-City Acceptance Corporation and commenced doing business in Sarasota, Florida. In the first month, it obtained $90,000 of public investments following advertisements that it would pay 12–15% interest. It was represented that the loans would be sécured by finance paper valued at 125% of the amount of the loan. It soon became apparent that there was no source of such paper and Leon suggested that Inter-City acquire Harold's companies. Contracts were executed whereby Inter-City acquired the four companies from Harold Gradsky on March 14 and 18, ostensibly for $11,000, plus an agreement to pay him $400 per week as a consultant for 90 days. There was a subsequent payment to Harold of $4500 for certain interests in his Tampa operation, and $500 was paid to an employe, McKee, for his interest in the company. The jury could find that all of these sums came out of the "investments" made by the public in Inter-City.

Zane and Gilmore both testified that the four parties, Harold and Leon Gradsky, Zane and Gilmore, were in fact to continue as partners; that the $16,000 (this apparently included the payment to McKee) purchase price was split four ways; that they all shared equally in the weekly compensation of $1400 and that they would all divide up the proceeds from "investments" after making required payments (presumably to keep the investors satisfied).

The two mailings that were the basis of the substantive counts of mail fraud on which appellant Gradsky was convicted occurred after March 14, at which time he was daily assisting in his task as consultant or adviser to the Inter-City corporation and at a time when he was still drawing compensation which the jury could believe was part of the money invested by the gullible investors. At this time also, the jury could believe testimony that Inter-City bought face-value of $100,000 worth of "loans" from another finance company for $5,000, but purported to pay $20,000 for them and that the $15,000 was divided between the four "partners." The jury could also believe that this money in which, according to the testimony of Zane and Gilmore, Gradsky shared, was from the "investments" made by the public in Inter-City on the representations that their loans would be secured. It is undisputed that this paper, bought for 5% of its face, was used on the basis of 125% of the face to give appearance to the collateralizing of loans. Thus a $1,000 loan would have $1250 face amount of paper as security. This $1250 was worth on the average 5% of its face, or $62.50. In point of fact, the testimony would warrant the jury's finding that practically *no* collections were made on the paper.

Further, although the evidence disclosed that there was some automobile paper that belonged to Federal Finance when it was transferred to Inter-City

4.  Leon Gradsky was also convicted in this case, but he committed suicide on December 5, 1965, when about to be incarcerated on another conviction.

on March 14 by appellant Gradsky, the jury could believe that it was practically worthless.

Zane and Gilmore admitted they diverted over $100,000 of Inter-City funds to their own individual purposes at a time after May, 1959, the date they said they had terminated their connection with the Gradskys. At this time, they turned their attention to a new venture. They practically gave Harold Gradsky's four companies to Muir and one Bennett, since deceased, who contrived to operate under the new name of Franklin Acceptance Corporation until they closed their doors to their defrauded investors in March 1961. The jury could find that Zane and Gilmore helped keep the Inter-City and Federal Finance successor afloat for two years, hoping (erroneously, it seems) that the statute of limitations would protect them from any criminal charges if they were able to do so.

██ There is no real question but that from March 14, 1959, the operation was shot full of fraud. Without going any more fully into the details of appellant Gradsky's activities, we conclude that the jury could find that he was a party to a scheme to defraud in furtherance of which he participated in causing the mailings described in counts 14 and 15 to be made. We also conclude that the testimony of Zane and Gilmore supports the government's charge that a conspiracy to commit the illegal acts originated before, and continued after the mailings in March and April, 1959. Ordinarily, a conviction may be sustained even though entirely based on the testimony of accomplices or fellow conspirators. Smith v. United States, 5 Cir., 343 F.2d 539, 544, cert. den. 383 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99; Quiles v. United States, 344 F.2d 490, 494 (C.A.9, 1965) cert. denied, 382 U.S. 992, 86 S.Ct. 571, 15 L.Ed.2d 479 (1966); Lemons v. United States, 339 F.2d 761, 764 (C.A.9, 1964) cert. denied 380 U.S. 985, 85 S.Ct. 1353, 14 L.E.2d 276 (1965); United States v. Goldberg, 330 F.2d 30 (C.A.3, 1964) cert. denied, 377 U.S. 953,

84 S.Ct. 1630, 12 L.Ed.2d 497 (1964); McClanahan v. United States, 230 F.2d 919, 922 (C.A.5, 1956) cert. denied 352 U.S. 824, 77 S.Ct. 33, 1 L.Ed.2d 47 (1956). Moreover, though relatively sketchy, we think the undisputed acts of Harold Gradsky following the transaction of March 14 would permit the jury to infer that he was a participant in the fraudulent acts carried on at least through May, 1959, after the critical mailings had occurred. We thus conclude that Gradsky's attack on the sufficiency of the evidence must fail.

Because of the severely damaging testimony of Zane and Gilmore as to Harold Gradsky's interest in the affairs of Inter-City after the acquisition of Harold's four companies in the middle of March, 1959, it becomes necessary to consider seriously the contention made by the appellant that Gradsky's case was illegally prejudiced by improper comment by the Assistant United States Attorney during his argument to the jury. Zane and Gilmore, at the time of this trial, were serving sentences in the federal penal institutions for other fraudulent operations. They were brought to the trial to testify on behalf of the government, and their prior convictions, together with the fact that they were alleged by the government to be co-conspirators, were the basis of serious attacks by the several defendants in their argument to the jury on their credibility. Of course, their credibility was directly material because much of the strength of the government's case, particularly against Harold Gradsky, must depend upon the jury's accepting as true the statements made by these two self-confessed conspirators who described the activities of Harold Gradsky after the transfer of his four companies to Inter-City in the middle of March, 1959.

During the argument, the Assistant United States Attorney said:

"We offered you Zane and Gilmore, and when we offer a witness we have to vouch for his credibility. Vouching for his credibility involves some feeling that the man is telling the truth,

and you can bet your life that whatever the other defense attorneys, being adversaries in this proceeding with me, just being concerned about getting a conviction—you can bet your life that this is still a country of the people, by the people, and for the people, and that *the government representatives don't put a witness on the stand unless there appears to be some credibility, until he appears to be a truthful witness.*

"Certainly, the *government* has every opportunity *to check out and to judge* the credibility and truthfulness of Mr. Zane and Mr. Gilmore in this case, and *in that context,* we offered you their testimony." (Emphasis added.)

Counsel for appellant Gradsky moved for a mistrial following this statement. The trial court denied the motion and did not comment on the matter to the jury.

■■ As this court has indicated in McMillian v. United States, 5 Cir., 363 F.2d 165, it is dangerous business for the prosecuting officer to state to the jury that the United States government vouches for the honesty or veracity of its witnesses. In that case, we cited from Dunn v. United States, 5 Cir., 307 F.2d 883, where, at page 885, we said:

"It is improper for counsel to express his personal opinion or to state facts of his own knowledge, not in evidence, and not a part of the evidence to be presented."

We then stated the test that should be applied to such a case:

"The inquiry should be whether the prosecutor's expression might reasonably lead the jury to believe that there is *other evidence, unknown or unavailable* to the jury, *on which* the prosecutor was convinced of the accused's guilt." 363 F.2d 165, 169. (Emphasis added.)

Here, it is impossible to construe the language used by the prosecuting attorney in any way other than saying that the government had run a check on these two witnesses and had concluded on the basis of such check, obviously out of the ken of the jury, that they were speaking the truth. This, therefore, is a much more damaging statement than that in the case of Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321, in which the Supreme Court found that the government's attorney did not say or insinuate that the statement (vouching for two witnesses) was based on personal knowledge or anything other than the testimony of those witnesses before the jury. Here, to the contrary, in two places the attorney's statements represented to the jury that the government's belief in the credibility of the witness was based on something other than the evidence of record. He first said that, "the government representatives don't put a witness on the stand unless there appears to be some credibility, until he appears to be a truthful witness." This could not appear *before* the government puts a witness on the stand, unless there had been some kind of check run on the witness *prior* to his being used. Thus, it is self-evident that the government's vouching of the witnesses was based on something "other than the testimony of those witnesses before the jury." Cf. Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311. So, too, as to the statement that the government "has every opportunity to check out and to judge the credibility and truthfulness of Mr. Zane and Mr. Gilmore in this case, and *in that context* [or, in other words, after having used the opportunity to check out their credibility] we offered you their testimony."

■ This statement by the Assistant United States Attorney was error; it was highly prejudicial; and may have contributed substantially to the verdicts of the jury which are on appeal here. The statement, therefore, makes it necessary that the judgment of conviction and sentences be reversed.

The final serious contention of the appellant, the claim that the trial court abused its discretion in not granting a severance to Harold Gradsky, need not

be decided in light of the disposition which we make of this appeal. The cases against the other defendants are finally disposed of. Thus, the question of severance in the event of a new trial on these same indictments cannot re-occur.

We hold that the trial court erred in not granting a mistrial, or in not charging the jury to disregard the statement of the prosecuting attorney in vouching for the two witnesses, Zane and Gilmore. We find that, on account of the very significant part that their testimony must have played in the consideration of the jury's case against this appellant, this error was highly prejudicial. For this reason, the judgment and conviction are reversed and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.