[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 452 
Lorene Moseley was convicted by a Montgomery County jury of sexual abuse in the first degree and was given a suspended sentence of five years' imprisonment. She appeals on eleven different grounds.
The facts of this case are particularly sordid; appellant's conviction arises from her attempt to induce her twelve-year-old daughter to commit and submit to certain sexual acts with a man who was the appellant's boyfriend. The child, who lived with her grandmother, went to visit her mother on a Sunday, at her mother's request. On Monday night she was forced by her mother to commit sodomy with her mother's boyfriend despite the fact that, in the child's words, "I kept begging her not to make me do it. . . ."
The girl was taken back home on Tuesday night and on Wednesday she told her grandmother what had happened; her grandmother then took her to the hospital and to the police station.
 I
Appellant first challenges certain questions asked by the state during the cross-examination of a general reputation witness. Specifically, appellant contends that the questions were not framed so as to make it clear that they referred to acts which occurred before the instant offense. Our Supreme Court has stated that:
 "When a witness testifies as to the general reputation or character of the defendant, the knowledge of the witness as to such reputation or character may be tested on cross-examination by asking him if he had heard of the defendant being charged with other offenses or of specific acts of bad conduct on the part of the defendant. Helms v. State, 254 Ala. 14, 47 So.2d 276, Kervin v. State, 254 Ala. 419, 48 So.2d 204; Johnson v. State, 260 Ala. 276, 69 So.2d 854. The better practice is to frame the question so as to inquire of the witness if he had heard of such occurrence prior to the commission of the offense for which the defendant is on trial. Ragland v. State, 178 Ala. 59, 59 So. 637." Aaron v. State, 271 Ala. 70, 122 So.2d 360 (1960), aff'd, 273 Ala. 337, 139 So.2d 309 (1961); writ denied, 275 Ala. 377, 155 So.2d 334 (1963), rev'd on other grounds, 283 Ala. 52, 214 So.2d 327 (1968), judgment modified, 49 Ala. App. 402, 272 So.2d 609
(1973).
We think it clear from an examination of the record that the questions in issue impliedly referred to a time before the alleged sexual abuse took place. The relevant portions of the record read as follows:
 "Q And have you also heard about the times when she wasn't living out of wedlock with other men, her frequency of attending bars at night and running around town, leaving her children to her mother?
"MR. POOL: We object to that, Your Honor.
 "THE COURT: It goes to the weight of this witness's testimony.
 "Q I ask you again, have you heard about the times when Lorene was not married or not living with someone, about the nights that she would hang out in bars and not come home and leave the children solely to her mother?
 "A I heard — her mother did tell me things to that effect.
"Q Yes. *Page 453 
We do not feel the court erred in overruling the objection. We note further that the objection did not assign specific grounds but was merely a general objection.
 II
During the cross-examination of the twelve-year-old victim in this case, defense counsel questioned her extensively concerning an alleged statement she had made at the time of the preliminary hearing in which she said that she had lied about the entire incident and that she did not want to testify. The state then called the investigator to whom the original complaint had been made. Through this investigator, the state undertook to prove a prior consistent statement. The usual rule is that when a witness has been impeached by a prior inconsistent statement, the proponent of that witness is not allowed to counter the impeachment through the introduction of evidence of a prior consistent statement. Murphy v. State,355 So.2d 1153 (Ala.Cr.App. 1978). However, as the Murphy case points out, "there is an exception to the principle, to be found in `prior' consistent statements by victims of rape or other sex offenses." That rule is stated in C. Gamble,McElroy's Alabama Evidence, § 178.01 (3d Edition 1977), in pertinent part as follows:
 "Where the testimony of the prosecutrix is impeached by proof of self-contradictory statements . . . the prosecution may prove her complaints in detail."
Thus, no error occurred in this respect.
 III
Appellant contends that it was reversible error to fail to compel the state to turn over to her a copy of a statement made by a state witness, after that witness had testified. The trial court did conduct an in camera inspection of the statement, at the conclusion of which the court denied the defense motion for production. Production for inspection of a statement of a prosecution witness after the witness has testified lies within the sound discretion of the trial judge. Ex parte Pate,415 So.2d 1140 (Ala.), on remand, 415 So.2d 1145 (Ala.Cr.App. 1981). The statement itself was not made part of the record. We can only conclude that after the in camera inspection the trial court determined that the statement made by the witness before trial did not differ in any substantial respect from the testimony during trial, that the statement did not contain material exculpatory to the defendant, and that the statement requested was not of such a nature that, without it, the defendant's trial would be fundamentally unfair. Thus, we find no error.
 IV
Appellant next contends that the court erred in permitting the following exchange to occur:
 "Q Did you ever hear about the time back in 1976 when she was arrested for filing a fraudulent false statement?
"A No.
 "MR. POOL: We object to that, Your Honor, unless he can prove these allegations.
 "MR. MENDELSOHN: Judge, I'm entitled to ask have you heard if I have a good faith belief it's true. I have a rap sheet here that shows she did it, and I'll be glad to tender it to the Court and present it to the jury.
 "MR. POOL: All right, we ask that he be compelled and required to do so, Your Honor.
 "THE COURT: Y'all come up here. (Whereupon a discussion was held at the bench out of the hearing of the Court Reporter and jury.)"
On the basis of the authorities cited in I above, we find that the question was proper during cross-examination of a defense character witness. No error occurred in this respect.
 V
Appellant next contends that the court erred in sustaining an objection to a question by defense counsel addressed to Miss Faulkner, an investigator with the *Page 454 
Youth Aid Division of the Montgomery Police Department. The pertinent part of the transcript reads as follows:
"Q Did you also interview Deb Freeman?
"A I didn't; another investigator did.
 "Q With regard to the results of those two interviews —
"MR. MENDELSOHN: Objection.
"THE COURT: Let's hear the question first.
 "MR. MENDELSOHN: There had been a Motion in Limine, Judge.
 "Q My question was simply going to be, to your knowledge were there any inconsistencies between the interview that Lorene granted and the one that Deb Freeman granted?
"THE COURT: Sustain the objection."
This witness had previously stated that she had not had any interview with Deb Freeman, an accomplice in the case. It would not make sense for her to testify regarding any alleged inconsistencies in the interview with the defendant and the interview which was, to her, hearsay. Thus, we find no error in this respect.
 VI
Appellant's attorney contends that reversible error occurred in the following cross-examination of the grandmother about the victim:
 "Q Have you had some problem in your mind about sex for a number of years?
"MR. MENDELSOHN: Objection.
"A Well, I think it's —
 "THE COURT: Just a moment, please, ma'am, the gentleman has made an objection.
 "MR. MENDELSOHN: Relevancy, Judge. I hate to object, but we've been going on and on with stuff that I don't see how it has anything to do with whether or not on October the 10th or October the 11th this lady committed any type of sexual misconduct against this victim.
"THE COURT: I sustain.
 "Q All right. Mrs. Sexton, you have had how many children, please, ma'am?
"A I have five living.
 "Q Five. Let me ask you whether or not you told your son recently within the last thirty days that you had in effect been raped by your husband five times that resulted in five children?
 "MR. MENDELSOHN: Objection. "THE COURT: No, sir. Sustained.
"A No, sir, I've never been raped."
Appellant has no grounds for complaint since the question was answered in the presence of the jury. The court had already permitted the appellant to range far afield in allowing him to question the grandmother of the victim regarding her personal and private attitudes regarding sex.
 VII
Appellant contends that the court erred in not permitting evidence relating to the past sexual behavior of the complaining witness. He asserts that the specific acts sought to be proved were part of the res gestae.
Alabama's rape shield statute, Section 12-21-203, Code of Alabama 1975, states in part that:
 "(b) In any prosecution for criminal sexual conduct or for assault with intent to commit, attempt to commit or conspiracy to commit, sexual conduct, evidence relating to the past sexual behavior of the complaining witness . . . shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or of other witnesses. . . ."
The exception to this rule is that evidence of past sexual behavior of the victim which directly involves the participation of the accused may be considered by the jury as bearing on the issue of consent. Ala. Code § 12-21-203 (c) (1975); Wooten v. State, 361 So.2d 1192 (Ala.Cr.App. 1978). However, evidence of particular acts of unchastity on the part of the victim with a third person are not admissible. Hollis v. *Page 455 State, 380 So.2d 409 (Ala.Cr.App. 1980). In the instant case, the trial court properly instructed the jury that evidence that the victim allegedly told her mother about a sexual encounter she had with a neighborhood boy should only be considered for the limited purpose of impeaching the witness's credibility.
We find no factual basis for the contention that specific sexual acts between the victim and a third person were part of the res gestae, as contended by appellant. The court did not err in this respect.
 VIII
Appellant next asserts that a particular venireman should not have been allowed to remain on the jury. During voir dire the following occurred:
 "THE COURT: Mr. Mooney, I understand you know the defendant in this case?
 "JUROR MOONEY: I do, but I don't know where from. I just — her face is very familiar, and I have seen her somewhere before. The name is also known to me, but I couldn't say it was from the newspaper, though.
"THE DEFENDNT: I worked at Morrison's —
 "THE COURT: Do you believe that that would influence your ability to sit as a juror in this case?
"JUROR MOONEY: I don't think so.
"THE COURT: Well, now is the time to —
 "JUROR MOONEY: I don't know where I know her from, so I really don't have anything that I could base it on. At some point I may remember, and then it might be a problem, but I don't at this time know where I remember her face from.
 "THE COURT: Are you telling me that to your knowledge right now, you can sit as a fair and impartial juror?
 "JUROR MOONEY: Right. You know, I don't have any recollection of any background in relation to her. I haven't read anything about the case in the paper. But I do know her from someplace.
 "THE COURT: All right. Bring all of your witnesses in so that I can swear them in at this time.
I note your objection, Mr. Pool. Overruled.
 "MR. POOL: Judge, could we be heard on this matter outside the presence of the jury?
 "THE COURT: I understand your objection. No, sir, I am ready to proceed."
We do not find any error on the part of the court in allowing this juror to remain on the jury. It is not a ground for challenge for cause that a juror thinks he remembers the accused. See § 12-16-150, Ala. Code (1975).
 IX
Appellant next contends that during the oral charge, the trial court committed error by telling the jury what acts had been relied upon by the prosecution to make out the state's case. After reviewing the charge, we find that none of the trial judge's comments rose to the level of improper commentary on the evidence.
In addition, appellant challenges the following portion of the charge:
 "Now, I want you to understand that the events which are alleged to have transpired on October the 10th are not what forms the basis of the charges in this case, but that testimony is offered to you for whatever weight you will give it in determining what happened on the 11th. All of the charges that are being made in this case are alleged to have occurred on October the 11th in this case, and you should understand that."
Since the victim testified that the actual physical contact between herself and her mother's boyfriend did not occur until October 11th, we find no error in this charge.
 X
In her tenth issue, appellant attacks the constitutionality of Alabama's rape shield statute (see VII above) on the grounds that it denies her the right to *Page 456 
confront witnesses. This issue has previously been before our court and once again we find it has no merit. Young v. State,429 So.2d 1162 (Ala.Cr.App. 1983), see also, Lawson v. State,377 So.2d 1115 (Ala.Cr.App. 1979). Statutes of this type are not unique to Alabama, and other jurisdictions have upheld such laws in the face of similar attacks on their constitutionality. In People v. Cornes, 80 Ill. App.3d 166, 35 Ill.Dec. 818,399 N.E.2d 1346 (1980), a case previously quoted with approval by this court, the Illinois court upheld that state's rape shield statute and commented:
 "Complainant's past sexual conduct has no bearing on whether she has consented to sexual relations with defendant. The legislature recognized this fact and chose to exclude evidence of complainant's reputation for chastity as well as specific acts of sexual conduct with third persons in cases of rape and sexual deviate assault. The exclusion of this evidence does not prevent defendant from challenging or attacking complainant's credibility or veracity or otherwise utilizing cross-examination as an effective tool of impeachment. It merely denies defendant the opportunity to harass and humiliate the complainant at trial and divert the attention of the jury to issues not relevant to the controversy."
As stated in Annot. 1 A.L.R. 4th 283 (1980):
 "Numerous contentions that a particular rape shield statute denied the defendant's right to confront and cross-examine witnesses or to present a defense have been rejected by the courts generally on the basis that the defendant had no right to question or to introduce evidence as to irrelevant, immaterial, or prejudicial matters."
We find no reason to reject these precedents.
 XI
Appellant finally contends that the court erred in its failure to grant a mistrial for an alleged assertion of personal opinion by the district attorney.
An examination of the record reveals objections of counsel to the alleged comment as well as rulings by the trial court on those objections. In addition, the transcript includes instructions by the lower court to the district attorney advising him not to "comment on the credibility of that witness, please, sir." We decline to reverse on this record. Even though reversal is not mandated in the instant case, we feel we must emphasize the line of cases decided by this court in which we have held that it is highly improper for attorneys, particularly prosecutors, to state their personal opinions in closing argument. As we stated in Brown v. State, 393 So.2d 513
(Ala.Cr.App. 1981), "attorneys should be careful in their arguments to the jury to refrain from an injection of their own personal experience or knowledge in support of their argument, as distinguished from what they deem to be reasonable inferences to be drawn from the evidence. This is especially true as to arguments by prosecuting counsel in criminal cases, for the reason that jurors generally know that prosecuting attorneys usually have had more experience in trying criminal cases . . . than attorneys in general. What they tell a jury as to their experience during the trial of a criminal case is more likely to influence a jury than what is told a jury by attorneys in general."
In Adams v. State, 280 Ala. 678, 198 So.2d 255 (1967), our Supreme Court said:
 "It is, of course, never proper for the prosecuting attorney or the defendant's attorney to state in argument to the jury their personal belief in the guilt or innocence of the accused. To do so is to place before the jury for consideration the lawyer's own character and credibility, which is no part of any judicial proceeding. The office of district attorney and counsel for the accused does not demand that the former's duty is to secure a conviction, and the latter's duty to obtain an acquittal; but rather, the primary duty is to see that justice is done. See Canons 5 and 15 of American Bar Association Canons of Professional Ethics. *Page 457 
And where, as here, the trial judge attributes beliefs to and sanctions such personal beliefs by opposing attorneys, even though the record was not protested by an exception, we call attention to the error so that it may not be repeated on another trial."
The rule was also set forth in Woods v. State, 19 Ala. App. 299,97 So. 179 (1923), rev'd on other grounds, 20 Ala. App. 200,101 So. 314 (1924), aff'd, 21 Ala. App. 436, 109 So. 171
(1926), as follows:
 "The personal opinion of the solicitor as to the guilt of the accused or as to any material fact involved in the case is not evidence. It should never be uttered by a prosecuting attorney, and, if the court gives sanction to such an utterance, it thereby commits error necessitating a reversal of conviction appealed from. Inferences and deductions from the evidence may be drawn by counsel almost without limit, but the minds of the jury should not be prejudiced, nor should they be swayed in their deliberations by unauthorized statements in the argument of the solicitor, such as, `In my honest opinion, and before God it is my honest opinion,' that such a state of facts exists. It is for the jury to say what state of facts exists, and this must be done by a consideration of all the evidence in the case, and such conclusion must not be reached by the honest or other character of opinion upon the part of the solicitor. In the annotation of the case of People v. Fielding (N.Y.) 46 L.R.A. 641, 667, [158 N.Y. 542, 53 N.E. 497] note, it is said:
 "`The personal opinion of the prosecuting attorney as to the guilt of the accused is not evidence, and the sanction of such an opinion by the court is serious error.'
 "`The right to a fair and impartial trial is violated by the misconduct of counsel in stating to the jury facts not in evidence because by so doing he fraudulently testifies without having been sworn as a witness.' People v. McGuire, 89 Mich. 66 [64], 50 N.W. 786.'"
Thus, this court is prepared to reverse any case that has been tainted by highly prejudicial prosecutorial comments to the jury where the issue has been properly presented and preserved for our review.
For the foregoing reasons, we conclude that no reversible error was committed in this case, and the judgment of the trial court is due to be affirmed.
AFFIRMED.