Alfonzo Bell was indicted and convicted for the murder of his common law wife, Maxine Bush. He was sentenced to twenty years' imprisonment. On appeal from that conviction, Bell's only argument is the claim that he was denied the effective assistance of counsel. While "[t]he claim of `ineffective assistance of counsel' has become a sort of `canned' claim which appears in practically every post-conviction claim," Exparte Boatwright, 471 So.2d 1257, 1259 (Ala. 1985) (Maddox, J., concurring specially), this case is unique in that trial counsel testified to his own ineffectiveness.
George Jones, Bell's court-appointed attorney, testified at a hearing on Bell's motion for new trial that his conduct prevented *Page 668 
Bell from receiving a fair and impartial trial. Among the members of the venire was a Mr. Harding who had previously been employed as a police officer for the City of Leeds. Attorney Jones testified that he "tactfully" attempted to maneuver the prosecutor, Rod Nelson, into "alienating" the venire by striking the former police officer. Jones stated that "[a]bout that time, Mr. Nelson turned red in the face and charged forward and . . . said, well, I don't want to take him off but I will join with a joint motion for the defense to take him off for cause." Jones perceived the prosecutor's response as an attempt to "prejudic[e] the rest of the venire against Mr. Bell, [by] the fact that Mr. Bell wanted that man off" the jury. Later, the trial court excused Mr. Harding for cause after examining him and determining that Harding "could not give a fair and impartial hearing to both the State and Mr. Bell." When this incident occurred, the trial court overruled defense counsel's motion for a mistrial based on the prosecutor's conduct. The court noted that Jones' impressions "are not the impressions of the Court gained as a result of this questioning and I doubt seriously it was the impression by any other person present in the courtroom other than you, Mr. Jones."
After his motion for a mistrial was overruled, Jones testified that he became "upset" and felt like a "bull seeing red." The victim's mother, who had an unrelated conviction for manslaughter, was seated at counsel's table next to the prosecutor. Jones pointed to the victim's mother and "asked Mr. Doyle [a venire person who stated that he had served on a jury in 1967 which had convicted an individual of manslaughter], is this the woman he convicted of manslaughter in 1967." Jones testified that he asked this question because he "was very upset at what had happened," felt that his client "had been taken advantage of," and "lost his temper." The prosecutor objected and requested a mistrial. The trial court polled the venire to see if there was "anyone that can't disregard that question by Mr. Jones" and then denied the mistrial.
The defendant argues that Jones' conduct alienated the entire venire against him and that, as a result of this alienation, the jury never fully considered the evidence of the defendant's intoxication at the time of the homicide. In support of this allegation, Jones testified at the hearing on the motion for new trial that, after his remarks about the victim's mother, he noticed "a lot of tight lips" on the faces of some of the venire people "like someone getting real mad and looking like . . . you have got caught doing something wrong." The trial court ruled that defense counsel's suspicions were ungrounded.
 "THE COURT: What he [defense counsel] visibly observed, I don't know about the benefit of clairvoyance which none of us have who would be able to judge the perception which he observed, any tight lipped appearance of a juror may not be as to anything that had occurred but may have been the result of any evidence that juror had heard or that might be the normal facial expression of that juror. I have seen some people that seem to get that appearance, I sustain it, I don't think there is no way you can tell the source for causation of facial expressions, so I sustain the objection."
* * * * * *
 "I observed the same thing that . . . Mr. Jones has observed, based on my observation I overruled the motion for a mistrial making the same observation which were remarkably different from what Mr. Jones observed."
Jones testified that he felt he did the defendant "wrong" and felt that "my conduct probably adversely reflected in his ability to have the jury adequately consider the reduction of the homicide from manslaughter to murder (sic)." In direct response to this, the trial court made the following statement:
 "THE COURT: Well, at that time when I charged the jury, I think the charge is and always is they were confined to the evidence that had been presented from the witness stand, that they shouldn't go *Page 669 
outside the evidence, so the Court's charge to the jury advises them that they couldn't put their personal feelings into it, that they had to face whichever verdict they returned solely on the evidence and I don't know of anything which would cause the Court to feel they did otherwise in reaching any other verdict that they did. First, let me begin saying that this case — the verdict in this case on essentially the same evidence was no different from the verdict which had been previously been reached by a jury on — made up of completely different people for which this case was ultimately reversed by the Court of Criminal Appeals and it was retried with the same evidence, a little bit different and the same verdict. So I can't see that anything was different than what was done in this case."
In Bell v. State, 455 So.2d 1022 (Ala.Cr.App. 1984), this Court reversed the defendant's initial conviction for the murder of Maxine Bush because the jury was instructed on "universal malice" murder when the indictment only charged intentional murder. At that first trial and appeal, Bell was also represented by George Jones.
In finding that counsel was not ineffective, the trial court applied the standards of Strickland v. Washington,466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
 "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at ___, 104 S.Ct. at 2064, 80 L.Ed.2d 674.
While we can only condemn the impropriety of defense counsel's comment before the jury venire that the victim's mother had been convicted of manslaughter, we do not consider it an error so serious that counsel was not functioning as the counsel guaranteed by the constitution. While in this case the alleged error was due to the fact that counsel had lost his temper and was upset, in any other case it could have been a deliberate, although improper, tactic employed by shrewd defense counsel as a matter of trial strategy to inform the jury of the victim's mother's bad character in an effort to prejudice the State. Obviously, the prosecutor in this case considered such information prejudicial as evidenced by his request for a mistrial. See generally Annot., 3 A.L.R. 4th 601, § 12 (1981) (adequacy of defense counsel's representation with regard to poor voir dire of jury).
Even if we were to find that Jones' "representation fell below an objective standard of reasonableness," Strickland, 466 U.S. at ___, 104 S.Ct. at 2065, 80 L.Ed.2d 674, in this one instance, the defendant has failed to affirmatively prove prejudice as a result of Jones' deficient performance. A review of the record reveals that, notwithstanding this isolated incident, "trial counsel was a competent and zealous advocate for his client and a fair and adequate defense was presented at trial." Wilson v. State, 460 So.2d 319, 320 (Ala.Cr.App. 1984). As the State noted in its brief, Jones "cross-examined the state's witnesses; he objected to the state's evidence when appropriate; he professionally presented the Defendant's case in chief; he submitted appropriate written requested charges which were given by the Court." (Appellee's Brief, p. 3.)
The defendant had the burden of showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Page 670 Strickland, 466 U.S. at ___, 104 S.Ct. at 2068, 80 L.Ed.2d 674. As the trial court noted, this was Bell's second conviction for the murder of Ms. Bush and convictions were had on essentially the same evidence.
Furthermore, the trial judge observed the conduct of defense counsel and the demeanor and reaction of the venire when counsel's alleged ineffectiveness occurred. The trial judge was in a position to gauge the effect of counsel's conduct as no other. In an abundance of caution, the judge polled the venire and determined that the improper remarks of defense counsel could be disregarded. Upon the record presented on appeal, this Court is in no position to contradict the finding of the trial court.
"In making the determination whether the specified errors resulted in the required prejudice, a court should presume . . . that the judge or jury acted according to law." Strickland, 466 U.S. at ___, 104 S.Ct. at 2068, 80 L.Ed.2d 674. "A jury should be credited with being men of fair intelligence, desiring nothing but to do their duty under oath." Baugh v.State, 215 Ala. 619, 621, 112 So. 157, 159 (1927). "It cannot be assumed that the jury's verdict was rested upon any act of which there was not the slightest intimation or evidence."Borok v. City of Birmingham, 191 Ala. 75, 77, 67 So. 389, 390
(1914).
The defendant has failed to sustain his "burden of showing that the decision reached would reasonably likely have been different absent the errors." Strickland, 466 U.S. at ___,104 S.Ct. at 2069, 80 L.Ed.2d 674. Moreover, the record convinces this Court that the defendant was represented by effective, competent and conscientious trial counsel despite any error that counsel may have made.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.