518 So.2d 191 (1987)
James Mitchell KING
v.
STATE.
1 Div. 18.
Court of Criminal Appeals of Alabama.
September 8, 1987.
Rehearing Denied November 24, 1987.
*192 James W. May, Gulf Shores, for appellant.
Charles A. Graddick, Atty. Gen., and Martha Gail Ingram, Asst. Atty. Gen., for appellee.
TAYLOR, Judge.
Petitioner was convicted in May 1982 of the murder of Horace Junior Goodwin and was sentenced to life imprisonment without parole. The record reveals that one of appellant's two trial attorneys also represented him on his original appeal.
On October 26, 1983, petitioner filed a pro se petition for writ of error coram nobis, the basis of the instant case. Petitioner alleged, among other things, that he was subjected to ineffective assistance of counsel and that he was denied a fair trial because of the conduct of the prosecutor during summation and the prosecutor's repeated vouching for his witnesses' veracity. A different attorney was appointed to represent petitioner at the coram nobis proceeding.
Petitioner's appointed coram nobis counsel, at the outset of the hearing, conceded the ineffective assistance issue. At the conclusion of the hearing the petition was denied.
Notice of appeal was given in April of 1985. Because the court reporter misplaced the transcript of the coram nobis proceeding, this court ordered that a new coram nobis proceeding be conducted. Before this could occur, the transcript was discovered and an out-of-time appeal was granted. In the interim, the original coram nobis counsel withdrew and petitioner's present attorney was appointed to represent him on appeal.
Petitioner now contends that the argument of the prosecutor, in summation, was so prejudicial as to deny petitioner a fair trial as provided by the Fifth and Sixth Amendments to the United States Constitution and Article I, § 6, of the Alabama Constitution of 1901. He further contends that the failure of his trial attorneys to make any objection or any request for curative instructions amounted to ineffective assistance of counsel.
We must first examine the challenged statements made by the prosecutor. The statements, which were all made in closing remarks, were as follows:
"On the other hand, and the Defense attorneys are probably going to tell you this, anyway; but the State vouches for what its witnesses say when they put them on the stand. And I do vouch for what my witnesses have said to you. I *193 believe they have been completely honest with what they have told you yesterday and today. They have told you the truth in this case....
"They didn't lie about anything. They did what they told you they did. And they talked to me, some of them did, one of them talked to me one time before we came to Court and I told everyone of them, `you better tell the truth when you get on that witness stand' because I cannot bring you what I believe to be falsehoods from the witness stand.
"And I do believe they told you the complete truth."
This court has previously addressed this issue and, following precedent, held that it is highly improper for attorneys, particularly prosecutors, to state their personal opinions during closing arguments. Moseley v. State, 448 So.2d 450 (Ala.Cr.App.1984). Attorneys must be careful to refrain from injecting their own personal experience or knowledge in support of their argument, as distinguished from what they deem to be reasonable inferences to be drawn from the evidence. Moseley, supra; Brown v. State, 393 So.2d 513 (Ala.Cr.App.1981).
In a particularly relevant portion of Moseley, this court noted:
"In Adams v. State, 280 Ala. 678, 198 So.2d 255 (1967), our Supreme Court said:
"`It is, of course, never proper for the prosecuting attorney or the defendant's attorney to state in argument to the jury their personal belief in the guilt or innocence of the accused. To do so is to place before the jury for consideration the lawyer's own character and credibility, which is no part of any judicial proceeding. The office of district attorney and counsel for the accused does not demand that the former's duty is to secure a conviction, and the latter's duty to obtain an acquittal; but rather, the primary duty is to see that justice is done. See Canons 5 and 15 of American Bar Association Canons of Professional Ethics. And where, as here, the trial judge attributes beliefs to and sanctions such personal beliefs by opposing attorneys, even though the record was not protested by an exception, we call attention to the error so that it may not be repeated on another trial.'
"The rule was also set forth in Woods v. State, 19 Ala.App. 299, 97 So. 179 (1923), rev'd on other grounds, 20 Ala. App. 200, 101 So. 314 (1924), aff'd, 21 Ala.App. 436, 109 So. 171 (1926), as follows:
"`The personal opinion of the solicitor as to the guilt of the accused or as to any material fact involved in the case is not evidence. It should never be uttered by a prosecuting attorney, and, if the court gives sanction to such an utterance, it thereby commits error necessitating a reversal of conviction appealed from. Inferences and deductions from the evidence may be drawn by counsel almost without limit, but the minds of the jury should not be prejudiced, nor should they be swayed in their deliberations by unauthorized statements in the argument of the solicitor, such as, "In my honest opinion, and before God it is my honest opinion," that such a state of facts exists. It is for the jury to say what state of facts exists, and this must be done by a consideration of all the evidence in the case, and such conclusion must not be reached by the honest or other character of opinion upon the part of the solicitor. In the annotation of the case of People v. Fielding, (N.Y.) 46 L.R.A. 641, 667 [158 N.Y. 542, 53 N.E. 497] note, it is said:
"`"The personal opinion of the prosecuting attorney as to the guilt of the accused is not evidence, and the sanction of such an opinion by the court is serious error."
"`"The right to a fair and impartial trial is violated by the misconduct of counsel in stating to the jury facts not in evidence because by so doing he fraudulently testifies without having been sworn as a witness." People v. *194 McGuire, 89 Mich. 66 [64], 50 N.W. 786.'"
Moseley, at 456, 457.
In United States v. Lamerson, 457 F.2d 371 (5th Cir.1972), the court was confronted with a statement by the prosecutor vouching for the credibility of his witnesses. The prosecutor said, "I firmly believe what they said is the truth. I know it is the truth, and I expect you do, too." The court held that when the prosecutor makes a statement which could be construed by the jury as implying that he has additional reasons for knowing that what the witness has said is true, which reasons are not known to the jury, such comment is no longer mere indiscretion but constitutes reversible error. The court noted that because the prosecutor said, "I know it is the truth," the inference was made that he had outside knowledge and, thus, that the prosecutor had overstepped the bounds of propriety. Lamerson, at 372. The prosecutor in Lamerson was giving the jury the impression that he knew something the jurors did not know and which proved the defendant's guilt.
The prosecutor in the instant case went far beyond the simple statement in Lamerson. As noted above, the prosecutor here said, "And I do vouch for what my witnesses have said to you. I believe they have been completely honest...." "They didn't lie about anything. They did what they told you they did."
Gradsky v. United States, 373 F.2d 706 (5th Cir.1967), held that it is "dangerous business" for the government to vouch for the honesty or veracity of its witnesses. In the instant case the prosecutor said, "... the State vouches for what its witnesses say when they put them on the stand." In both Gradsky and Lamerson, reversal was required because "the prosecutor's expression might reasonably [have led] the jury to believe that there [was] other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt." Gradsky, at 710. See also, Dunn v. United States, 307 F.2d 883 (5th Cir.1962).
The Alabama Supreme Court has recently firmly condemned statements by the prosecution which suggest and might lead the jury to believe, that there was other evidence, not presented to them, which would prove the defendant's guilt. Ex parte Washington, 507 So.2d 1360 (Ala. 1986). There the Supreme Court noted:
"It has long been the rule in Alabama that, although counsel should be given considerable latitude in drawing reasonable inferences from the evidence, they may not argue as a fact that which is not supported by the evidence. Brown v. State, 374 So.2d 395 (Ala.1979); Espey v. State, 270 Ala. 669, 120 So.2d 904 (1960); Cosby v. State, 269 Ala. 501, 114 So.2d 250 (1959); Garrett v. State, 268 Ala. 199, 105 So.2d 541 (1958); Ray v. State, 248 Ala. 425, 27 So.2d 872 (1946). This has been the rule since it was first stated in McAdory v. State, 62 Ala. 154 (1878)...."
Ex parte Washington, supra, at 1361.
The Supreme Court went on to reverse this court's decision, which had affirmed the conviction of Washington in Washington v. State, 507 So.2d 1358 (Ala.Cr.App. 1986), reversing on the grounds that the following statement by the prosecutor was so improper, as to constitute reversible error:
"And there are certain things, because of our rules that we cannot present to you, but you heard Sergeant Williams"
507 So.2d at 1361. The Supreme Court held that such a statement made in the prosecutor's closing summation was "intolerable." Noting that the statement implied that there was other evidence, not introduced, by which the defendant's guilt could be proven, the Court held that reversal was required.
This court is required to follow the rulings of the Alabama Supreme Court. With respect to improper statements by prosecutors, the position of our Supreme Court in Ex parte Washington, condemning statements that imply or suggest that there is additional evidence, not introduced, which could prove defendant's guilt, appears to closely mirror the position of the *195 United States Fifth Circuit Court of Appeals in Gradsky and Lamerson. Accordingly, in reliance on this authority, we find that the statements by the prosecutor in which he vouched for his witnesses' credibility might reasonably have led the jury to believe that there was other evidence, unknown or unavailable to them, on which the prosecutor was convinced of petitioner's guilt. The prosecutor's argument was, therefore, not acceptable argument and was highly prejudicial.
Petitioner's trial attorneys made no objections to the improper argument of the prosecutor. Therefore, the decision in this coram nobis matter turns on whether their failure to do so subjected petitioner to ineffective assistance of counsel. The Sixth and Fourteenth Amendments of the United States Constitution guarantee that a defendant is entitled to reasonably effective assistance of counsel. Barham v. United States, 724 F.2d 1529 (11th Cir.), cert. denied, 467 U.S. 1230, 104 S.Ct. 2687, 81 L.Ed.2d 882 (1984); United States v. Burroughs, 650 F.2d 595 (5th Cir.), cert. denied, 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed. 2d 483 (1981).
The United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2054, 50 L.Ed.2d 674 (1984), set forth a two-part test for reviewing ineffective assistance of counsel claims:
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.
This test has been frequently applied by this court. See Williams v. State, 489 So.2d 4 (Ala.Cr.App.1986); Bell v. State, 489 So.2d 667 (Ala.Cr.App.1986); Jackson v. State, 485 So.2d 797 (Ala.Cr.App.1986).
We must first determine whether the performance of petitioner's trial attorneys was deficient. In considering this point, we have carefully considered whether their failure to make objections to the improper remarks of the prosecution could be considered to be trial strategy. In proving ineffectiveness, the petitioner has the burden of proof and "must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Strickland, 466 U.S. at 689, 104 S.Ct. at 2065; see also Dill v. State, 484 So.2d 491 (Ala.Cr.App.1985).
The record shows that although no objections were made, the trial attorneys did make reference in closing arguments to the statements by the prosecution vouching for its own witnesses. In closing, they essentially stated that the testimony of the prosecution's witnesses was untrue, regardless of what was said by the prosecuting attorney. We must determine if the failure of petitioner's attorneys to make timely objection to the improper remarks could be considered "sound trial strategy," in view of the fact that they did address the matter in closing. Strickland, supra. Generally, objection to testimony is a matter of trial strategy and, absent a clear showing of improper or inadequate representation, should be left to the judgment of the trial counsel. Haynes v. State, 461 So.2d 869 (Ala.Cr.App.1984); Zeigler v. State, 443 So.2d 1303 (Ala.Cr.App.1983).
In the instant case, had an objection to the improper argument been timely interposed, it would have been due to be sustained. Had objections not been sustained, reversal on appeal would have been mandated. See Lamerson, supra; Gradsky, supra; Ex parte Washington, supra. The failure of petitioner's trial attorneys to *196 make these objections precluded appellate review on this critical issue. Dixon v. State, 476 So.2d 1236 (Ala.Cr.App.1985); Vinzant v. State, 462 So.2d 1037 (Ala.Cr. App.1984); Palms v. State, 431 So.2d 1373 (Ala.Cr.App.1983); Hughes v. State, 412 So.2d 296 (Ala.Cr.App.1982). There was little credible reason why the failure to make these objections could be considered "sound trial strategy." Strickland, supra. Therefore, we must conclude that the failure to object by petitioner's trial attorneys fell outside the range of reasonable trial strategy and was an error. We hasten to state that failures to make objections are more frequently well within the broad range of trial strategy. The fact that such failures may preclude appellate review does not change the rule that decisions to object or not are customarily trial strategy questions.
We must now determine, pursuant to the second part of the Strickland test, whether the deficient performance of petitioner's trial attorneys resulted in prejudice to petitioner. In Gradsky, supra, Lamerson, supra, and Ex parte Washington, supra, statements by the prosecution implying that there was additional evidence, not introduced, which could prove the defendant's guilt have been determined to be highly prejudicial to the defendant, requiring reversal. Nevertheless, in each case, the burden of proving prejudice is on the defendant, and he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; see also Dill, supra.
The question before us then is, had petitioner's attorneys objected to the improper argument of the prosecutor vouching for the credibility of his witnesses, would there be a reasonable probability that the result of the trial would have been different?
There were five eyewitnesses to the murder of the victim by the accused. These witnesses were all present on the houseboat at Patrick's Landing on the Tensaw River in Baldwin County, where the murder occurred. Phyllis Goodwin, wife of the victim, Horace Goodwin, stated that she and her husband sold drugs. She testified that they had brought their drugs, Dilaudid and marijuana, with them to protect them because their home in Pensacola, Florida, had recently been burglarized. Testimony revealed that it was these drugs that the burglars were seeking.
The testimony of the five eyewitnesses to the murder is reasonably consistent. Each particularly identified the appellant, King, as the taller of the two robbers. The robbers had entered the room on the houseboat where the witnesses were at about 11:00 p.m. They were observed in good light for approximately twenty minutes by all the witnesses, who were sitting around a kitchen table when they entered. The two robbers began taping the wrists and the ankles of those present with duct tape. The accused did the taping after handing his gun to the other robber. They demanded to know where the drugs were located. Finally, the accused began to tape up Horace Goodwin. Goodwin lunged at the other robber, who was then holding both guns, butting him with his head. The man with the guns pushed Goodwin down on the floor. At this point, the accused in this case said, "Shoot him, shoot the son-of-a-bitch." The other robber then shot Goodwin in the chest and Goodwin again fell backward on the floor. Then the two robbers ran out the door. Goodwin ran out the door in pursuit and tackled one of the robbers. He was then shot in the chest a second time and the robbers escaped in a car.
Placing Goodwin in a truck to take him to the hospital, the witnesses found that the left rear tires of each of their vehicles had been slashed. They ran from door to door, trying to find a way to telephone for help. Finally, an ambulance was summoned and arrived. Horace Goodwin died in the ambulance on the way to the hospital.
Cross-examination of these witnesses consisted in part of asking them what drugs they had used in the past, what *197 drugs they had used that night, and what the effect of those drugs usually was. The defense rested without calling any witnesses or presenting any testimony except by cross-examination. In summation, the defense attacked the character of the witnesses and their ability to see, as well as slight variations in their testimony. However, all of the testimony was reasonably consistent. It would have been necessary to disbelieve the uncontradicted eyewitness testimony of every eyewitness to conclude that the accused was not the robber who ordered the other to shoot the deceased. The testimony of the witnesses was entirely uncontradicted.
When the prosecutor throws his own credibility onto the scales of decision, he tips the scales and changes the balance in an unlawful way. The petitioner's attorneys should have objected to this unlawful argument, moved that the jury be instructed to disregard, or for curative instructions, moved for a mistrial, and perhaps moved that the prosecutor be admonished. It was error to fail to object to these arguments. However, this is an unusual case: a murder with five eyewitnesses present in the room and observing. The state's evidence was absolutely overwhelming. There is no "reasonable probability" that the result of the proceeding could have been different. No doubt was raised that was "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 1068.
We have analyzed the facts of this case using the United States Supreme Court's two-part Strickland test to determine if counsel's assistance was so defective as to require reversal and a new trial. The first test has been answered in the affirmative. The second test is answered in the negative.
Accordingly, this case is due to be affirmed.
AFFIRMED.
PATTERSON, J., concurs.
TYSON, J., concurs in result only.
McMILLAN, J., joins with BOWEN, P.J., who concurs specially with opinion.
BOWEN, Presiding Judge, concurring specially.
I concur only in the result reached by the majority, that being that the denial of the petition for writ of error coram nobis should be affirmed.
I disagree with the majority's conclusion that "[t]he prosecutor in the instant case went far beyond the simple statement in Lamerson." Considering the substance and significance of both statements, I do not find that much difference between them.
Although I am in full accord with the majority's holding that the prosecutor's statement was improper, I disagree with the majority's finding that the statement was "highly prejudicial." The remark was not "highly prejudicial." Even the majority recognizes, at the end of the opinion, that "[t]here is no `reasonable probability' that the result of the proceeding could have been different" had proper objection been advanced. Consequently, the defendant was not prejudiced by the remark.
While the majority is "unable to discern a credible reason why the failure to make such an objection could be considered to be `sound trial strategy'," I have little difficulty with finding such a reason. When a prosecutor makes an improper comment at trial, defense counsel has two choices. He can object and request curative instructions, hoping the trial judge will sustain his objection and give adequate instruction to the jury to disregard the improper remark. Whether or not the objection is sustained, he must question whether or not he has called the jury's attention to a bell that once rung cannot be unrung.
Defense counsel's second choice is to attempt to deflate the significance of the prosecutor's comment by not objecting to it when made and by either responding to the comment in his rebuttal argument or simply ignoring it altogether. Here, defense counsel chose to respond to the prosecutor's statement in his closing argument.
*198 In this case, I cannot state, as does the majority, that this was not sound trial strategy.