Eugene Anthony filed an action against Beautilite Company, Inc. ("Beautilite"), alleging breach of a contract to install vinyl siding "in a good and workmanlike manner" and fraud. The jury returned a $71,292.34 verdict for Anthony, and the trial court entered judgment on the verdict.
Anthony solicited bids from several vinyl siding companies for the installation of siding on his home and for installing a vinyl "skirt." Beautilite's representative, Fred Hoppe, submitted the lowest bid, and Anthony and Beautilite signed a contract. Anthony presented evidence that, during the contract negotiations, he specifically requested that Beautilite use treated lumber and that Beautilite agreed to do so.
Beautilite retained Howard Wilson, an independent contractor, to do the work. Under Hoppe's supervision, Wilson installed the siding, including the vinyl skirt, in July 1985. Sometime in October 1985, Anthony began to have problems with moisture accumulation in his home. The walls began to sweat, and mildew formed. The carpet became wet and then mildewed. About a month after the moisture problems began, Anthony complained to Hoppe. After an inspection, Hoppe told Anthony and his wife that their problems were not Beautilite's fault.
The moisture problems worsened. Mrs. Anthony testified that she scrubbed the walls every two weeks, attempting to remove the mildew, but to no avail. The odor became sufficiently offensive that when Mrs. Anthony and her children returned from school, she would keep the children outside. She continually sprayed the house with aerosol cleaners and opened the windows and doors. The odor persisted and the mildew became worse, covering the Anthonys' shoes and clothes.
Hoppe visited the Anthonys again to look at the problems in their home. Testimony at trial indicates that this time he told them they needed a new roof to cure the problem. The Anthonys replaced the roof, but the mildew, rot, and odor problems continued. Although Anthony called Hoppe several more times on the telephone, Hoppe never again visited Anthony's house.
On December 5, 1986, Anthony filed this action. The complaint, as amended, claimed that Beautilite breached a contract "to install in a good and workmanlike manner vinyl siding and a vapor barrier" and claimed fraud, alleging that Hoppe had told Anthony that the problems with the house were caused by a bad roof, not the work done by Beautilite, and alleging that Beautilite had said it would use treated lumber in the work, but had actually used untreated lumber.
At trial, Anthony contended that the vinyl skirt did not provide adequate ventilation for the house, and by failing to do so caused moisture to be trapped under the house and to create the moisture problems. Harvey Heiser, an expert witness, testified that the crawl space area under the house was saturated and that the rot, mildew, and mold problems were due to excess moisture caused by improper ventilation caused by Beautilite. Starr Prolsdorfer also testified as an expert witness for Anthony. Prolsdorfer testified that the moisture problems in Anthony's house were caused by Beautilite's failure to vent properly the crawl space where Beautilite had installed the vinyl siding and skirt. Prolsdorfer stated that Beautilite violated the Mobile building code by providing only five percent of the required ventilation and by not using treated wood to connect the vinyl siding to the bottom of the house. William Norton, chief building inspector for the city of Mobile, also testified that Beautilite's work failed to meet the building code minimum requirements that Prolsdorfer described.
Beautilite presented evidence that indicated that Anthony's problems with his *Page 948 
home were caused by plumbing leaks and bad drainage and pre-existed Beautilite's installation of the vinyl. Hoppe testified inconsistently concerning whether he had told Anthony that the problem with the house was that it needed a new roof.
During the trial, Anthony's lawyer asked a question concerning whether Beautilite had shown a letter to its insurance carrier, and Beautilite moved for a mistrial based on this question, which Beautilite claimed improperly injected the issue of insurance into the trial. The trial court denied Beautilite's motion for a mistrial, as well as its motions for a directed verdict.
Beautilite's first argument for reversal is that the trial court erred when it denied Beautilite's motion for a mistrial. Beautilite was defended at trial by its insurance carrier under a complete reservation of rights, so that whether Beautilite's insurer was obligated to pay any judgment against Beautilite was undetermined. During Anthony's cross-examination of Beautilite's president, Lambert Roberts, Anthony's lawyer asked, "Now did you turn your letter over to your insurance carrier?" The trial court immediately sustained Beautilite's objection to this question. In a conference shortly thereafter, the trial court initially indicated that it might grant a mistrial, but the next morning, after reading the letter, the trial court denied Beautilite's motion for mistrial.
The letter in question was one that Anthony's lawyer had written to Fred Hoppe. That letter pertinently stated:
 "As Mr. Anthony has mentioned to you in the past, he has a problem with moisture and fungus which occurred after your company installed the siding on his home in June of 1985. Mr. Anthony has determined that the ventilation is inadequate and that it is causing the moisture accumulation. It will cost $2,920 to kill the fungus and properly ventilate the house. Of course, that pays nothing to Mr. Anthony to compensate him and his family for the inconvenience and loss of enjoyment of their home which they have endured since your siding was installed. Please turn this letter over to your insurance carrier or get in touch with me at your earliest convenience."
(Emphasis supplied.) Beautilite introduced the letter into evidence and used it in examining two witnesses.
Alabama law disapproves of introducing testimony or other evidence that tends to show that a party from whom one seeks damages is or may be indemnified by an insurance company. See, e.g., Thompson-Weinman Co. v. Robinson, 386 So.2d 409
(Ala. 1980); Robins Engineering, Inc. v. Cockrell, 354 So.2d 1
(Ala. 1978). Basing its argument on that general proposition, Beautilite argues that it was prejudiced by Anthony's lawyer's question and that that prejudice was greatly worsened because Beautilite was defended under a reservation of rights, so that the jury might receive the impression that Beautilite was definitely covered by insurance, when, in fact, whether Beautilite's insurer is obligated to pay a judgment against Beautilite is currently undetermined. On the other hand, Anthony argues that because Beautilite introduced the letter that referred to Beautilite's insurer and used the letter in questioning witnesses, the question that his lawyer asked should not be a basis for a mistrial. Although both arguments contain colorable merit, we find Anthony's argument more convincing. Beautilite introduced the letter and examined witnesses concerning it, and should have foreseen that Anthony would use it to cross-examine and to attempt to impeach Beautilite's president. Furthermore, although Beautilite introduced the letter, it did not request that the sentence about the insurance carrier be deleted until after the motion for mistrial had been denied. Had Beautilite initially requested that the sentence be deleted, our finding might be different. However, as the case is presented, we will not hold that the trial court committed reversible error when it denied Beautilite's motion for a mistrial. If Anthony's lawyer had not asked the question, the letter presumably would have gone to the jury intact and thus would have presented the matter of insurance to the jury simply by virtue of Beautilite's having introduced it. *Page 949 
Beautilite next argues that the trial court committed reversible error by refusing to allow defense counsel to elicit testimony concerning Beautilite's defense that Anthony breached the contract by failing to pay for the siding. The pertinent portion of the transcript states:
 "Q. All right. Well, ma'am, why didn't he pay Beautilite for the job or at least completely pay them for it almost a year later, a year and sixteen months later?
"A. It wasn't a year and sixteen months, sir.
"Q. Well, ma'am, how long was it?
 "A. It was an agreement made between him and Mr. Hoppe that he would pay $4,000 after the work was completed, and then the rest soon after. There was an agreement made.
 "Q. Okay. Well, how long after the work was completed did he pay the $4,000? It was about three or four months, wasn't it?
"A. No, sir.
 "THE COURT: That got something to do with this case?
 "MR. BURNS: I don't know what it does, your honor.
 "MR. McCRANIE: Well, yes, sir. They're suing for breach of contract.
 "THE COURT: Well, I'll take it up later. I don't think it has anything to do with the case. Go ahead with your questions.
"MR. McCRANIE: Well, we'll move on, judge."
(Emphasis supplied.) Though the trial court at first questioned the relevancy of Beautilite's line of questioning, it did not forbid the line of questioning and did not rule on its relevancy, choosing instead to "take it up later" and telling Beautilite to "Go ahead with your questions." Beautilite, saying "Well, we'll move on, judge," voluntarily gave up its line of questioning. No adverse ruling is presented for review.Boise Cascade Corp. v. Lee, 291 Ala. 666, 286 So.2d 836 (1973);Reddish v. Reddish, 455 So.2d 891 (Ala.Civ.App. 1984).
Beautilite also argues that the trial court should have directed a verdict for it on the breach of contract claim, because, it argues, Anthony failed to produce proper evidence of the amount of damages. The claim was for failure to install siding in a good and workmanlike manner, and Anthony submitted evidence of the cost of repairs. In similar cases, where the plaintiff has been denied the benefit of his bargain, because of faulty construction, proof of cost of repairs has been held to be sufficient proof of the amount of damages. See, West v.Friday, 403 So.2d 213 (Ala. 1981); United States Fidelity Guaranty Co. v. Jacksonville State University, 357 So.2d 952
(Ala. 1978); Freeman v. Turner, 374 So.2d 354
(Ala.Civ.App. 1979). The trial court did not err in submitting Anthony's breach of contract claim to the jury.
Further, Beautilite argues that Anthony's fraud claim is barred by the statute of limitations of Ala. Code 1975, §6-2-38(l), and that the evidence Anthony presented at trial is insufficient to support the jury's verdict on the fraud claim. Beautilite also argues that the evidence does not support the imposition of punitive damages on Anthony's fraud claim and that the trial court erred by charging the jury on punitive damages. As to Beautilite's statute of limitations defense, we note that Anthony's amended complaint alleged fraud arising out of the same facts that Anthony made the basis for the breach of contract claim in the original complaint, which was filed within the limitations period for a fraud action. Accordingly, the fraud claim related back to the date of the filing of the original complaint, Rule 15, A.R.Civ.P.; Bank of Red Bay v.King, 482 So.2d 274 (Ala. 1985); National Distillers ChemicalCorp. v. American Laubscher Corp. 338 So.2d 1269 (Ala. 1976), and it is not barred by the statute of limitations.
From the evidence presented, the jury could have found that Hoppe willfully misrepresented to Anthony that the problems he was experiencing with his house were caused by his roof, not by anything that Beautilite did, and that he needed a new roof. Hoppe, despite many telephone calls from Anthony, inspected Anthony's house only twice, and he failed to send a specialist to inspect the house, as he had *Page 950 
promised to do. The jury was entitled to conclude that Hoppe was affirmatively acting to divert the blame for Anthony's problems from Beautilite. Anthony relied on Beautilite's representations to his detriment, by paying $1,600 for a new roof when there was no evidence that the roof otherwise needed replacing. Anthony testified that he replaced the roof because Hoppe said it was causing the problem and because Hoppe led him to believe that Hoppe was qualified to make that determination. The evidence also indicates that Anthony relied on Hoppe's representations to his detriment in that, while he was acting on Hoppe's misdirections, he took no action to correct the true cause of the problems to his house. Considering this evidence, along with the other evidence presented, we hold that the trial court properly denied Beautilite's motion for directed verdict on Anthony's fraud claim and properly charged the jury on punitive damages in relation to Anthony's fraud claim.
Beautilite also argues that the trial court committed reversible error when it denied Beautilite's motion for a new trial based on allegedly improper closing arguments made by Anthony's lawyer. Beautilite contends that Anthony's lawyer made several "golden rule" arguments, asking the jurors to put themselves in the position of the Anthonys in arriving at the verdict. In its order denying Beautilite's motion for a new trial, the trial court held that, considering the plaintiff's argument as a whole, the portions to which Beautilite objected were not grounds for a new trial. The court wrote: "The court observed the demeanor and reaction of the jury during closing arguments and finds no prejudice occasioned by any remarks made by plaintiff's counsel." The record does not contradict that finding. "The standard of review by this Court on claims of improper argument is that we will not reverse unless substantial prejudice has resulted, and there is a presumption in favor of the trial court's ruling." Seaboard Coast Line R.R.v. Moore, 479 So.2d 1131, 1136 (Ala. 1985). This argument provides no basis for reversal.
Finally, Beautilite argues that the judgment is excessive and due to be remitted, and that the case should be remanded for the trial court to comply with Hammond v. City of Gadsden,493 So.2d 1374 (Ala. 1986). We quote the trial court's order, which both complies with Hammond and properly disposes of this issue:
 "The damages were not excessive. The jury found that through the fault of the defendant the plaintiff's house was made almost uninhabitable for an extensive period of time. The cost of repair was in excess of $10,000. Also, mental anguish is a recoverable item of damage in a breach of contract action when the breach involves the home as in this case. The testimony and demeanor of the witnesses certainly supports the conclusion that the plaintiff suffered mental anguish.
 "There was credible evidence from which the jury could find that when questioned about the problems the plaintiff was having with his house that the defendant's agent reacted with calloused indifference. Further the evidence would support a finding that the defendant perpetrated an intentional or reckless fraud upon the plaintiff. After defendant had knowledge of the plaintiff's problem and had opportunity to determine that its breach of contract caused that problem the defendant misled the plaintiff. The defendant told the plaintiff that the problems with his house were the result of a defect in his roof. This resulted in the plaintiff purchasing a new roof which did not diminish his problems. The problems plaintiff suffered with his house did not diminish until the defendant's work was corrected.
 "The court finds that the verdict is supported by the evidence. It is compatible with credible evidence consistent with the law and [is] not the product of bias, passion, or a fraud upon the court."
The judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur. *Page 951