[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 137 
Phillip Allen, the appellant, was convicted of sexual abuse in the first degree and was sentenced to 20 years' imprisonment. This is a direct appeal from that conviction.
 I.
The appellant complains of a number of remarks by the prosecutor. At the outset, we note that "trial courts should not hesitate, in proper instances," to impose disciplinary sanctions upon "attorneys who fail to conduct themselves according to high standards of courteous and correct behavior in the trial of cases." Ex parte Farley, 406 So.2d 1050, 1051
(Ala. 1981).
The legal principles applicable to the issues raised by the appellant were thoroughly discussed in King v. State,518 So.2d 191, 193-95 (Ala.Cr.App. 1987). In summary, we quote only a portion of that opinion:
 "This court has previously addressed this issue and, following precedent, held that it is highly improper for attorneys, particularly prosecutors, to state their personal opinions during closing arguments. Moseley v. State, 448 So.2d 450
(Ala.Cr.App. 1984). Attorneys must be careful to refrain from injecting their own personal experience or knowledge in support of their argument, as distinguished from what they deem to be reasonable inferences to be drawn from the evidence. Moseley, supra; Brown v. State, 393 So.2d 513 (Ala.Cr.App. 1981).
". . . .
 ". . . [W]hen the prosecutor makes a statement which could be construed by the jury as implying that he has additional reasons for knowing that what the witness has said is true, which reasons are not known to the jury, such comment is not longer mere indiscretion but constitutes reversible error. . . .
". . . .
 "Gradsky v. United States, 373 F.2d 706 (5th Cir. 1967), held that it is 'dangerous business' for the government to vouch for the honesty or veracity of its witnesses. . . .
 "The Alabama Supreme Court has recently firmly condemned statements by the prosecution which suggest and might lead the jury to believe, that there was other evidence, not presented to them, which would prove the defendant's guilt. Ex parte Washington, 507 So.2d 1360 (Ala. 1986)." *Page 138 
King v. State, 518 So.2d 191, 193-94 (Ala.Cr.App. 1987) (emphasis in original).
 A.
We reject the contention that the prosecutor impermissibly stated his personal opinion of the appellant's guilt. In concluding his opening remarks to the jury at the beginning of trial, the prosecutor stated:
 "Even though it's an emotional case, I ask each and every one of you to listen to the facts, listen to the evidence that comes in to this court and find the facts based on that, don't find the facts of this case based on what I say or what Mr. Huddleston [defense counsel] says, because those are not the facts.
 "The facts and evidence are what come from this witness stand when these people swear to tell you the truth and you judge those witnesses to determine whether they have been truthful with you. I ask each and every one of you to pay close attention to those witnesses as they testify and the other witnesses that we put up that follow concerning their investigation in this case.
 "This case, as I've already said, is emotional, but I ask you to be fair, listen to the evidence and I'm confident at the close of this evidence you will find this man guilty of committing sodomy, having oral sex with a child under twelve.
 "And I'm confident that you'll find this man guilty of sexually abusing a child. And I'm confident that you'll find that these charges didn't arise from the fact that this man gave one of these children a bath or that this man maybe put his arm around a child. I'm confident you'll find these charges arose because they happened.
 "And at the close of this case, as you've already heard the judge say, there's going to be a time when I get to give closing argument, Mr. Huddleston gets to talk and then I get to get up again because I have the burden of proof. And it's a burden of proof that I welcome in this case. I have to prove to you through the evidence in this trial that these charges took place beyond a reasonable doubt. And it's a burden I ought to have and it's a burden that I gladly accept.
 "At the close of this case I'm going to come to each and every one of you and I'm going to ask each and every one of you pursuant to the oath you took as jurors in this county to find this man guilty because he's guilty. Thank you." R. 91-93 (emphasis added).
Outside the presence of the jury, defense counsel requested a mistrial on the "basis of prosecutorial misconduct in the prosecutor commenting upon the defendant's guilt, saying the defendant is guilty." R. 95. The trial court denied the request for a mistrial, but stated that defense counsel would be given an opportunity "to present case authority on that point." R. 97. Later during the trial, after defense counsel had provided the trial court with legal authority to support his earlier request for a mistrial, the trial judge stated:
 "And I took that to mean during the closing argument that is what he anticipates he's going to — he is sort of telling them as part of the overview of what's going to happen that this is what's going to happen during his closing argument. 'That pursuant to the oath that you took in this county, I'm going to ask you to find this man guilty because he is guilty.'
 "I do not think that is an expression of a personal opinion on the part of the prosecutor as to the guilt of the accused. So I'm going to deny your motion, Mr. Huddleston, for a mistrial at this point."
". . . .
 "That was my impression of what [the prosecutor] intended at that time was not to bully the jury in any way as has [been] done in some of these cases but simply to say that I want you to find him [guilty] because he's guilty; not because of any other reason but because he is guilty. Not because of anything else except that.
". . . .
 ". . . I think given the context in which it was [said] that it was not an expression and would not have prejudice[d] the jury in any way or invade[d] the province of the jury. I don't think that he was expressing his personal belief in the defendant's guilt. *Page 139 
I don't think that that was conveyed to the jury and basing that on the context, and I have reviewed all those cases, so I'm going to deny your motion for a mistrial." R. 250-54.
We find no error in the action of the trial court.
 "While it is never proper for the prosecutor to express his personal opinion as to the guilt of the accused during closing argument, reversible error does not occur when the argument complained of constitutes mere expression of opinion concerning inferences, deductions and conclusions drawn from the evidence."
Sams v. State, 506 So.2d 1027, 1029 (Ala.Cr.App. 1986).
 " '[T]he rule on which the weight of authority is in agreement is that it is improper for the prosecuting attorney so to express his personal opinion or belief in guilt of accused as to permit an inference by the jury that such opinion or belief is based on reasons or information outside the evidence, but that it is not improper for him to argue or to express his opinion that accused is guilty, where he states, or it is apparent, that such opinion is based solely on the evidence.' "
Bradley v. State, 577 So.2d 541, 555-56 (Ala.Cr.App. 1990) (quoting 23A C.J.S. Criminal Law § 1104, p. 194-95 (1961)).
Based on a review of the prosecutor's entire opening statement, we conclude that the statement of the prosecutor did not constitute an expression of opinion as to the appellant's guilt. "When an accused contends that a prosecutor has made improper comments . . ., the statements at issue must be viewed in the context of the evidence presented in the case and the entire . . . argument made to the jury." Ex parte Musgrove,638 So.2d 1360 (Ala. 1993).
 "Each case must be decided in view of the unique circumstances involved and the atmosphere created in the trial. Obviously, the trial court is in a better position than this Court to observe these circumstances. See General Finance Corp. v. Smith, 505 So.2d 1045 (Ala. 1987). For that reason, the trial court's ruling on these matters carries a presumption of correctness. Beautilite Co. v. Anthony, 554 So.2d 946 (Ala. 1989)."
Walker v. Asbestos Abatement Services, Inc., 639 So.2d 513, 515
(Ala. 1994).
The cases relied upon by the appellant are distinguishable. In Quinlivan v. State, 579 So.2d 1386, 1387 (Ala.Cr.App.),cert. quashed, 596 So.2d 658 (Ala. 1991), the prosecutor, in rebuttal closing argument stated, "I'm not obliged to try any case that I don't want to try" and "I'm commanded by the law . . . to prosecute the guilty and protect the innocent." (Emphasis omitted.) In Crosslin v. State, 446 So.2d 675, 680
(Ala.Cr.App. 1983), on cross-examination of the defendant, the prosecutor, in response to the objection of defense counsel, stated that there was nothing improper about his question in which he stated that the defendant "did the killing" because "he did kill them."
It is clear from a review of the record that the prosecutor's comment in this case was an expression of opinion based upon facts that were in evidence and, as such, was a reasonable inference from the evidence the prosecutor expected to present. There was no error here.
 B.
The appellant also complains of the prosecutor's comments involving the appellant's daughter made during the direct examination of Baldwin County Sheriff's Deputy John Stewart. The appellant was prosecuted for crimes against two children, S.P. and A.C., neither of whom was a child of the appellant.
On direct examination of Deputy Stewart, the prosecutor questioned the witness about statements the appellant had made to Stewart about S.P., who was the niece of the appellant's wife, and A.C., whose stepfather was the appellant's brother. Then the following occurred:
 "Q. Besides discussing S.[P.] and A.C., did you discuss another child involving Mr. Allen?
"A. Yes, sir.
"Q. Who was that?
"A. That was his daughter, [L.]. *Page 140 
 "Q. What did he say to you about his daughter?" R. 311.
At that point defense counsel requested a bench conference and objected to the prosecutor's attempt to "introduce evidence of another allegation made which is not germane to this case." R. 312.
During the argument on this objection, the prosecutor stated: "Previously this defendant was accused of molesting this other child and the other child is the defendant's daughter." R. 312. The trial judge sustained the appellant's objection.
On direct examination by defense counsel, the appellant testified that he took more children than just S.P. and A.C. on tractor rides. R. 360, 365. He also testified that in order to shift gears on the tractor, he had to reach down between S.P.'s legs and indicated that he might have touched S.P. at that time but that "there wasn't nothing to it." R. 366. The appellant testified that if he touched either S.P. or A.C., "it was an accident during the course of [a] tractor ride." R. 373. The names of the specific other children who had ridden on the tractor with the appellant were mentioned by defense counsel in his direct examination of the appellant. R. 367.
Defense counsel also questioned the appellant about children who had done "yard work" at the appellant's house and specific children were mentioned by name. R. 370. Defense counsel questioned the appellant about the fact that his daughters, who were mentioned by name, lived with the appellant. R. 371. The appellant testified about his relationship with children other than S.P. and A.C., including his daughter L. R. 374.
On cross-examination of the appellant by the prosecutor, the following occurred.
 "Q. You ever had any problems with your daughters, Mr. Allen?
"A. Which one?
"Q. [L.]?
"A. Yes, sir." R. 390.
Defense counsel requested to approach the bench and the jury was excused. After argument, during which the prosecutor stated his reasons for asking the question, the prosecutor withdrew his question and the trial court sustained defense counsel's objection but denied his motion for a mistrial. R. 401-02. The "primary basis" for the question was stated by the trial judge:
 "I want to make sure that I understand what the State's basis is for asking questions concerning [L.], and that was that because the defendant has testified concerning the other children and more or less raised the issue about his good relationships or good acts with other children. . . ." R. 398.
The appellant argues that the prosecutor was "attempting to show a prior allegation of sexual abuse involving appellant's daughter for an improper purpose — 'to show that he [appellant] probably committed these acts that are at issue in this case.' (R. 400)." Appellant's brief at 42-43. While this may have been the prosecutor's intent, we find that his questions did not convey that message to the jury.
Because the trial court sustained the objections of defense counsel, we need not decide whether the questions were proper. See Ex parte Register, 640 So.2d 12 (Ala. 1994) (collateral sexual misconduct may be relevant where there is a resemblance between the sexual misconduct with which the defendant was charged and the prior collateral acts as to which evidence was admitted). See also Hatcher v. State, 646 So.2d 676 (Ala. 1994).
"[A] mistrial is a drastic remedy, to be used only sparingly and only to prevent manifest injustice, and . . . the decision of whether to grant a motion for a mistrial rests within the sound discretion of the trial court." Ex parte Thomas,625 So.2d 1156, 1157 (Ala. 1993) (citation omitted).
 "It is a well-decided rule of this court that the granting of a mistrial is an extreme measure and should be taken only when it is manifestly necessary or when the ends of justice would otherwise be defeated. Hagood v. State, 588 So.2d 526 (Ala.Crim.App. 1991), cert. denied, Martin v. Alabama, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). Moreover, 'the trial judge is allowed broad discretion in determining whether a mistrial should be declared because he is in the best position *Page 141 
to observe the scenario, to determine its effect upon the jury, and to determine whether a mistrial should be granted.' Garrett v. State, 580 So.2d 58
(Ala.Crim.App. 1991)."
Harrell v. State, 608 So.2d 434, 436 (Ala.Cr.App. 1992).
 "As the Alabama Supreme Court has made clear, 'the trial judge is in the best position to determine the probable effect of any comments or incidents occurring at trial,' General Motors Corp. v. Johnston, 592 So.2d 1054, 1059 (Ala. 1992), and the judge 'must be given wide discretion in determining whether the making of a certain utterance by the District Attorney requires that a mistrial be granted,' White v. State, 294 Ala. [265,] 270, 314 So.2d [857,] 862[, cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288
(1975)]."
Smiley v. State, 655 So.2d 1074, 1090 (Ala.Cr.App. 1993). The trial court acted within its discretion in denying the motion for a mistrial.
 C.
The appellant complains that in his closing argument the prosecutor improperly vouched for the credibility of his witnesses. In his closing argument, the prosecutor did state that the children who testified "were telling . . . the truth" (R. 463); however, there was no objection to this or any other comment in this regard. See R. 462-464.
The appellant also complains that in his closing argument to the jury the prosecutor improperly exhorted the jury to perform its duty and to return a verdict of guilty by stating, "[I]f you hold it against these children that because of the fact they were molested in the dark or away from anyone else when the molestation took place, then you are going to find this defendant not guilty and you are not doing your duty as jurors." R. 463-64. There was no objection to this or any other comment in this regard.
 " 'An adverse ruling is a preliminary requirement to preservation of error and appellate review. . . . Absent an adverse ruling the issue of the objection is not properly before this court.' Van Antwerp v. State, 358 So.2d 782, 790
(Ala.Cr.App.), cert. denied, Ex parte Van Antwerp, 358 So.2d 791 (Ala. 1978). 'A party cannot claim error where no adverse ruling is made against him.' Holloway v. Robertson, 500 So.2d 1056, 1059
(Ala. 1986). An adverse ruling by the trial judge is a prerequisite for preserving the alleged error for appellate review. Borden v. State, 523 So.2d 508, 511 (Ala.Cr.App. 1987)."
Harrell v. State, 555 So.2d 257, 259 (Ala.Cr.App.), affirmed,555 So.2d 263 (Ala. 1989).
 "An appellate court's review on appeal is limited to matters seasonably raised in the trial court. 'Even questions involving constitutional rights must be seasonably raised at the trial court level.' . . .
". . . .
 ". . . In all but capital cases, alleged error in a criminal proceeding must be properly preserved before an appellate court will examine it; therefore, it is incumbent upon defense counsel to adequately preserve alleged errors in a proceeding by making an appropriate and timely objection."
Ross v. State, 581 So.2d 495, 496 (Ala. 1991). "The trial court may not be put in error for failure to rule on a matter which was not presented to it or decided by it." City of Rainbow Cityv. Ramsey, 417 So.2d 172, 174 (Ala. 1982). "[I]t is familiar law that an adverse ruling below is a prerequisite to appellate review. We generally cannot consider arguments made for the first time on appeal." CSX Transp., Inc. v. Day, 613 So.2d 883,884 (Ala. 1993).
 D.
The appellant did object to the prosecutor's comment referring to the infamous and notorious criminal Jeffrey Dahmer. In his closing argument, the prosecutor stated:
 "Some of you may think, you know, he's in here wearing a shirt, wearing a tie, he doesn't look like what I would think a child sex abuser would look. He's been neat, nicely dressed and he doesn't look perhaps like a child molester.
". . . . *Page 142 
 "Do you think that the children who were abused by Jeffrey Dahmer knew when they saw Jeffrey Dahmer that —
 "MR. HUDDLESTON [defense counsel]: Your Honor, this is a very inflammatory bullying argument to which I object. I think that comparing Phillip Allen to Jeffrey Dahmer in the closing argument here is outrageous and would ask that the Court fix it.
 "THE COURT: Sustain the objection. Mr. Raines, please refrain from making comparisons between the defendant and Jeffrey Dahmer.
"MR. RAINES: Yes, Your Honor.
 "MR. HUDDLESTON: And I'd like to preserve a motion at this time for presentation outside of the presence of the jury after Mr. Raines is finished.
"THE COURT: All right." R. 499-500.
After the trial judge instructed the jury on the legal principles involved in this case and sent the jury to the jury room, but before deliberations had begun, defense counsel moved for a mistrial "on the basis of Mr. Raines comparing Phillip Allen to Jeffrey Dahmer." R. 528. In response, the prosecutor stated:
 "Judge, I was not comparing Mr. Dahmer to Mr. Allen. My intention in presenting that evidence was to show the jury that you cannot simply tell whether a person is a child molester by the way they look. Mr. Dahmer was a rather clean-cut looking individual at the time that these crimes were perpetrated upon children and that was the point that I was trying to convey to the jury." R. 529.
After hearing argument from both defense counsel and the prosecutor, the trial judge denied the motion for a mistrial.
 "THE COURT: Mr. Huddleston, as you recall, we did sustain your objection to that, any comparison and we made a curative instruction to the jury concerning that and a limiting instruction to the jury. I'm going to deny your motion for a mistrial on that basis. Anything further?
"MR. HUDDLESTON: No, ma'am." R. 530.
The record does not reflect that the trial judge gave any curative or limiting instruction. Yet, when given the opportunity, defense counsel did not contradict the trial judge's recollection of this matter. We note that in her charge to the jury the trial judge did give the following instruction:
 "Your verdict is to be based solely on the evidence that was presented to you. And the evidence would be the testimony, the exhibits, and would not include the arguments of counsel, the indictment or anything other than the testimony that was presented to you or any exhibits that you might have had." R. 505.
As we have previously observed:
 "[Certain comments], especially when repeated, may be so grossly improper and highly prejudicial that an appropriate objection or motion invoking correction instruction or action by the trial court is not required. Christian [v. State], 351 So.2d [623, 626 (Ala. 1977); Allred v. State, 291 Ala. 34, 38, 277 So.2d 339 (1973). However, the general rule is that prejudicial statements, even though improper, are considered capable of being eradicated by the trial judge in sustaining objections thereto or by appropriate instructions to the jury or both. Allred v. State, supra; Dunn v. State, 277 Ala. 39 at 44, 166 So.2d 878
(1964); Bachelor v. State, 216 Ala. 356, 361, 113 So. 67 (1927); Anderson v. State, 209 Ala. 36, 44, 95 So. 171 (1922)."
Meredith v. State, 370 So.2d 1075, 1078-79 (Ala.Cr.App.), cert. denied, 370 So.2d 1079 (Ala. 1979). Accord Holladay v. State,549 So.2d 122, 131 (Ala.Cr.App. 1988), affirmed, 549 So.2d 135
(Ala.), cert. denied, 493 U.S. 1012, 110 S.Ct. 575,107 L.Ed.2d 569 (1989).
 "The digest abounds with instances where the prosecutor has commented on the defendant's character or appearance. . . .
 "The controlling principles are found in 23A C.J.S. Criminal Law, Section 1102 (1961).
 " 'Comments by the prosecuting attorney which refer to, and make unfavorable inferences from, the conduct of accused in the course of the transaction for which he is on trial, or his conduct at *Page 143 
any other time or place, or which refer to his character as shown by such conduct, or to his background, breeding, or associations, or to other details of his personal history or characteristics are proper, where the purported facts referred to by counsel are supported by competent evidence in the case, and where the inferences and deductions sought to be made from such facts are within the bounds of proper argument. On the other hand, remarks or argument of the prosecuting attorney concerning the character or conduct of accused, which is not supported by the record or which exceeds the limits of fair argument or inference is improper.
 " 'In a proper case, the prosecuting attorney may characterize accused or his conduct in language which, although it consists of invective or opprobrious terms, accords with the evidence in the case, and, where the evidence warrants the belief that accused is guilty, the prosecutor may employ terms appropriate to the nature or degree of turpitude involved in the crime charged; but characterizations not justified by the evidence or the charge which the evidence tends to prove, and hence merely abusive, or which are couched in intemperate and inflammatory language are, . . . improper.'
 "See also 6 Am. Jur. Trials, Prosecution Summations 873, 917 (1967).
 " 'The prosecutor is at liberty to strike hard blows, but he must not strike foul ones; that is, while comment may be made about the defendant or his witnesses, it must be based on the testimony that the defendant or his witnesses gave from the stand or on rational conclusions concerning the defendant or witness that flow from the evidence in the case.' "
Barbee v. State, 395 So.2d 1128, 1134 (Ala.Cr.App. 1981).
 "We cannot find objectionable the prosecutor's references to Brutus and Benedict Arnold when our Supreme Court has approved a reference to Judas. 'Argument of counsel should not be so restricted as to prevent reference, by way of illustration, to historical facts and public characters, or to principles of divine law or biblical teachings.' Wright v. State, 279 Ala. 543, 550-51, 188 So.2d 272 (1966). See also Barbee v. State, 395 So.2d 1128, 1134-35 (Ala.Cr.App. 1981). There was evidence that [the defendant] was a deacon in his church and respected in his community. There was also the State's evidence that he 'sold dope.' Under this evidence, it was permissible for the prosecutor to make allusion to other villains who had wrapped themselves in the cloak of respectability."
Williams v. State, 455 So.2d 210, 212-13 (Ala.Cr.App. 1984).
Jeffrey Dahmer is an infamous serial killer who distinguished himself by consuming the flesh of some of his victims. We find the prosecutor's remark in this case unwarranted. InSattari v. State, 577 So.2d 535, 537 (Ala.Cr.App. 1990), cert. denied, 577 So.2d 540 (Ala. 1991), this Court found that "the prosecutor's comparisons of appellants, who [were] on trial for the charge of arson in the first degree, to a capital murderer [was] a completely unwarranted and disproportionate analogy."
 "The use of such tactics by representatives of the State can seriously affect the fairness, integrity, and public reputation of judicial proceedings. This type of rhetoric by prosecutors has 'no place in the administration of justice and should neither be permitted nor rewarded.' United States v. Young, 470 U.S. 1, 26, 105 S.Ct. 1038, 1052, 84 L.Ed.2d 1 (1985). Such behavior deserves 'stern and unqualified judicial condemnation.' Id. at 28, 105 S.Ct. at 1052."
Sattari v. State, 577 So.2d at 538. In this case, the trial judge properly sustained defense counsel's objection and instructed the prosecutor in front of the jury not to make such a comparison. Although her instructions do not appear in the record, the trial judge stated that she gave curative and limiting instructions to the jury in this regard. Under these circumstances, we find no abuse of discretion in the denial of the appellant's request for a mistrial. *Page 144 
 E.
Finally, the appellant claims that in his closing argument the prosecutor improperly expressed his personal opinion of the appellant's guilt and impermissibly vouched for the credibility of the witnesses for the prosecution. The basis for this argument is found in the following statements by the prosecutor during his closing argument:
 "And unlike what Mr. Huddleston wants you to do, you did not go out and seek any possible doubt you could just find floating around. You went back and you hunted for the truth. The truth. Justice. And in Latin the word verdict means truth. I'm not asking you for an emotional verdict. I'm asking you for a true verdict based on this evidence. That's what I'm asking you for.
 "Are these kids lying to you? Were they lying to you? They weren't lying to you. Despite all the lawyers you can throw in this courtroom there is nothing to change the fact of what these kids are telling you what happened. There is nothing.
 "I submit to you, in your hearts and in your minds you know . . . what the truth is in this case and you know what the facts show and you're not going to be led astray by ridiculous theory — perhaps it came from a video or perhaps it came from this or perhaps it came from that.
 "Because you are going to go back there and you are going to make your decision. It's going to be a truthful decision. These children didn't lie to you. The witnesses the State presented to you didn't lie to you. We're here because there is an enormous problem in this county and we are trying to correct it. Find this man guilty because it's the truth. It's the truth, find him guilty." R. 502-04 (emphasis added).
These remarks concluded the assistant district attorney's closing argument to the jury. There was no objection at the time the remarks were made. Only after the trial judge had instructed the jury did defense counsel request a mistrial. See R. 524-25. That motion was untimely.
 "To be timely, a motion for a mistrial must be made 'immediately after the question or questions are asked that are the grounds made the basis of the motion for the mistrial.' Ex parte Marek; 556 So.2d 375, 379 (Ala. 1989). The motion is untimely if it is not made until the conclusion of the witness's testimony. Menefee v. State, 592 So.2d 642 (Ala.Cr.App. 1991); Robinson v. State, 584 So.2d 533 (Ala.Cr.App.), cert. quashed, 584 So.2d 542
(Ala. 1991)."
Powell v. State, 631 So.2d 289, 292-93 n. 2 (Ala.Cr.App. 1993). See also Pettway v. State, 607 So.2d 325, 331
(Ala.Cr.App. 1992).
" '[Ex parte Marek, 556 So.2d 375 (Ala. 1989),] indicates that a motion for mistrial compensates for the lack of an objection or motion to strike as long as the motion for mistrial followsimmediately after the offending question.' Robinson v. State,584 So.2d 533, 538 (Ala.Cr.App.) (emphasis in original), cert. quashed, 584 So.2d 542 (Ala. 1991)." Covington v. State,620 So.2d 122, 126-27 (Ala.Cr.App. 1993).
 "Questions of the propriety of argument of counsel are largely within the trial court's discretion, McCullough v. State, 357 So.2d 397, 399
(Ala.Cr.App. 1978), and that court is given broad discretion in determining what is permissible argument. Hurst v. State, 397 So.2d 203, 208
(Ala.Cr.App.), cert. denied, 397 So.2d 208
(Ala. 1981). Moreover, this Court has stated that it will not reverse unless there has been an abuse of that discretion. Miller v. State, 431 So.2d 586, 591 (Ala.Cr.App. 1983).
". . . .
 ". . . In reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract. Whitlow v. State, 509 So.2d 252, 256 (Ala.Cr.App. 1987); Wysinger v. State, 448 So.2d 435, 438 (Ala.Cr.App. 1983); Carpenter v. State, 404 So.2d 89, 97
(Ala.Cr.App. 1980), cert. denied, 404 So.2d 100
(Ala. 1981). Moreover, this Court has also held that statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually *Page 145 
valued by the jury at their true worth and are not expected to become factors in the formation of the verdict. Orr v. State, 462 So.2d 1013, 1016
(Ala.Cr.App. 1984); Sanders v. State, 426 So.2d 497, 509 (Ala.Cr.App. 1982)."
Bankhead v. State, 585 So.2d 97, 105-07 (Ala.Cr.App. 1989), remanded on other grounds, 585 So.2d 112 (Ala. 1991).
 "[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial."
United States v. Young, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044,84 L.Ed.2d 1 (1985), quoted in Murry v. State, 562 So.2d 1348,1354 (Ala.Cr.App. 1988).
Considering the facts and circumstances of this case and considering the specific context in which the objectionable comments were made, we find no reversible error.
 II
The appellant asserts that the trial court erred by failing to give curative instructions with respect to each of the prosecutor's comments to which he objected.
Defense counsel never requested any curative instruction.[1] However, "[t]here is no requirement that in making a motion for a mistrial, defense counsel include a request for instructions to disregard." Covington v. State, 620 So.2d 122, 127
(Ala.Cr.App. 1993). See also Ex parte Marek, 556 So.2d 375, 379
(Ala. 1989).
While a defendant's failure to request instructions as part of his motion for a mistrial will not constitute a waiver of the issue of the failure to instruct, we think it should weigh against any claim of prejudice. Cf. Ex parte Hart,612 So.2d 536, 537 (Ala. 1992), cert. denied, ___ U.S. ___,113 S.Ct. 2450, 124 L.Ed.2d 666 (1993) (in a capital case, "[t]he failure to object will weigh against any claim of prejudice"); Dill v.State, 600 So.2d 343, 360 (Ala.Cr.App. 1991), affirmed,600 So.2d 372 (Ala. 1992), cert. denied, ___ U.S. ___,113 S.Ct. 1293, 122 L.Ed.2d 684 (1993) ("[w]hile th[e] failure [to object] does not preclude our review [in capital cases], it does weigh against any claim of prejudice").
Admittedly, the better practice would have been for the trial judge to instruct the members of the jury that they were to disregard the comment as to which an objection was sustained. See Campbell v. State, 570 So.2d 1276, 1281 (Ala.Cr.App. 1990). However, we cannot say that the trial judge's failure to issue curative instructions resulted in reversible error under the particular circumstances presented in this case. " 'Much must be left, in the matter of an attorney's argument and statements, to the enlightened judgment of the trial court, with presumptions in favor of its rulings. To justify a reversal, we must conclude that substantial prejudice has resulted.' " Harley-Davidson, Inc. v. Toomey, 521 So.2d 971,973 (Ala. 1988) (quoting Louisville N.R.R. v. Wade, 280 Ala. 453,456, 195 So.2d 101, 103 (1967)).
 III
The appellant asserts that the prosecutor exercised his peremptory strikes of certain veniremembers in a racially discriminatory manner in violation of Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
The record indicates that there were four blacks on the 45-member venire. The prosecution struck three blacks. Although she did not find that the appellant had established a prima facie case, the trial judge requested the prosecutor to provide his reasons for striking the three black veniremembers.
The prosecutor stated that he struck one black veniremember for several reasons:
 "One, Mr. [A.] indicated that he was familiar and was friends with the wife of Curtis *Page 146 
Coats who I previously convicted in the county of two counts of rape and two counts of sodomy in the first degree against two children. . . .
 "Two, . . . is that I've been informed Mr. [A.] has a child support hearing that he's presently had hearings on because he's not paying his child support [on time]. Therefore, that concerns me about Mr. [A.'s] concern for children in this community.
 "Three, it's on the record, Judge, and if you can recall Mr. [A.] did not appear to be mentally all there. He could not remember his verdict that he had, he didn't remember the difference in grand jury or criminal jury. He had a lot of trouble remembering things as a whole. And I was also concerned about that.
 "His uncle is also in jail for burglary and there are tons of [people having that same surname] in Foley that have been indicted and prosecuted by the D.A.'s office." R. 64-65.
We cannot approve of every reason given by the prosecutor for striking this veniremember. However, we do find that the prosecutor gave at least two clearly racially neutral and acceptable reasons for striking this veniremember — mental incapacity and an uncle presently in jail.
Striking a veniremember on the basis of his or her "demeanor" is not favored. See Avery v. State, 545 So.2d 123, 127
(Ala.Cr.App. 1988). Such an explanation "presents considerable difficulty to the trial courts as well as to the reviewing authorities in determining its truthfulness" and "should be closely scrutinized by both the trial and appellate courts."Id. Similarly disfavored, is the "body language" explanation, which is also "especially subject to abuse because of [its] insusceptibility to an objective evaluation by the trial judge." Ex parte Bird, 594 So.2d 676, 685 (Ala. 1991).
In contrast, more specific concerns regarding the veniremember's appearance may be deemed sufficient. For example, the fact that a veniremember "appear[ed] to be asleep or inattentive" during voir dire has been held to be an acceptable reason. Kelley v. State, 602 So.2d 473, 476
(Ala.Cr.App. 1992); Smith v. State, 531 So.2d 1245, 1248
(Ala.Cr.App. 1987).
A veniremember's involvement in or connection with criminal activity may serve as a race-neutral reason for the strike of that veniremember. E.g., Wilsher v. State, 611 So.2d 1175,1181, 1183 (Ala.Cr.App. 1992) (one veniremember had been "charged with or convicted of crimes in the past"; another veniremember "had been charged with assault, third degree, and . . . D.O.C."); Whittlesey v. State, 586 So.2d 31, 32
(Ala.Cr.App. 1991) (veniremember had been investigated for rape, although grand jury ultimately "no billed" the case); Avery v.State, 545 So.2d 123, 126 (Ala.Cr.App. 1988) (veniremember was a "defendant in a pending criminal case"). "This connection with or suspicion of criminal activity includes the juror in question, as well as close relatives and friends of the juror."Heard v. State, 584 So.2d 556, 560 (Ala.Cr.App. 1991).
In connection with his reasons for striking the second black veniremember, the prosecutor stated:
 "Ms. [B.] is a single parent with three children. A young female who's — these are the notes that I made, who continued to look away and constantly roll her eyes at me when I discussed the sexual abuse law. She refused to give me any response to those questions and she refused to give me an indication with head one way or the other. She just seemed bored with this whole procedure.
 "Also, from my understanding, Ms. [B.] is from the Fairhope community, currently there is a [person with the same surname] that has been indicted for child manslaughter from the Fairhope community and it's my concern that she may also be related to that [person]." R. 65-66.
Again, we cannot approve of every reason given by the prosecutor for striking this veniremember.[2] However, we do find that *Page 147 
the prosecutor gave at least one clearly racially neutral and acceptable reason for striking this veniremember — "lackadaisical attitude" (R. 68) displayed by the fact that she did not respond to voir dire questions. In this regard, we note that defense counsel accused the prosecutor of "attempting to have the venire engage in an audience participation game with him regarding the nodding of the head and shaking of the head about this sex abuse law." R. 67. A veniremember's failure to "participate" in that "game" would constitute a valid race-neutral reason.
In connection with both veniremembers, we note that a "mere suspicion" that the veniremember is related to someone previously prosecuted is not sufficient to constitute a race-neutral reason. "[I]f the prosecut[or] thinks that a veniremember may be related to a former defendant, she [or he] must ask the veniremember." Ex parte Bird, 594 So.2d 676, 683
(Ala. 1991) (prosecutor did not inquire on voir dire about one veniremember's suspected relationship with a former defendant or about another veniremember's apparent nonuse of college degree); Hemphill v. State, 610 So.2d 413, 416
(Ala.Cr.App. 1992) (prosecutor did not inquire on voir dire about veniremember's suspected acquaintance with defense counsel).
The prosecutor gave the following reason for striking the third black from the venire:
 "My notes indicate that he is a single parent, he is not married and he has previously served on a jury trial and he voted not guilty in a drug case, Judge.
 "One other thing I would like to tell the Court is I have a particular tendency to strike people from the jury venire whose professions are those that deal with numbers, statistics, things along that line where you are very specific, and his occupation was that he was an inspector and deals with specific details in the profession of his job and I don't prefer to put him on my jury when I can avoid it as well." R. 74.
The fact that a veniremember served on a jury that returned a not guilty verdict or that was unable to return a verdict has been held to be an acceptable reason for striking that veniremember. E.g., Childers v. State, 607 So.2d 350, 352-53
(Ala.Cr.App. 1992) (veniremember previously served on jury that returned a not guilty verdict); Powell v. State, 608 So.2d 411,414 (Ala.Cr.App. 1992) (veniremember previously served on a jury that was unable to reach a verdict); Whittlesey v. State,586 So.2d 31, 32 (Ala.Cr.App. 1991) (three veniremembers had previously served on juries that returned not guilty verdicts or that were unable to reach a verdict); Watkins v. State,551 So.2d 421, 422 (Ala.Cr.App. 1988) (one veniremember previously served on a jury that returned a not guilty verdict; another veniremember had previously served on two juries — one criminal, one civil — both of which were unable to return a verdict).
Within the context of Batson, a "race-neutral" explanation "means an explanation based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."Hernandez v. New York, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866,114 L.Ed.2d 395 (1991). "In evaluating the race-neutrality of an attorney's explanation, a court must determine whether, assuming the proffered reasons for the peremptory challenges are true, the challenges violate the Equal Protection Clause as a matter of law." Id. "[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within the trial judges's province.' " Hernandez,500 U.S. at 365, 111 S.Ct. at 1869.
 IV
The appellant argues that the prosecution's use of its peremptory challenges to remove 11 of the 15 males on the jury venire constituted gender discrimination in violation ofBatson. The trial judge, applying the law *Page 148 
as it existed at the time of trial[3], denied the appellant's "motion regarding the gender based challenge." R. 73.
On April 19, 1994, a majority of the Supreme Court of the United States held that "the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender, or on the assumption that an individual will be biased in a particular case for no reason other than the fact that the person happens to be a woman or happens to be a man."J.E.B. v. Alabama, ___ U.S. ___, ___, 114 S.Ct. 1419, 1430,128 L.Ed.2d 89 (1994). Like Batson v. Kentucky, upon which it is predicated, the holding of J.E.B. will apply to all cases that are pending on direct appeal and that were not "final" at the time J.E.B. was decided.
 "In Ex parte Jackson, 516 So.2d 768, 772
(Ala. 1986), the Alabama Supreme Court, without awaiting direction from the United States Supreme Court on this particular issue, 'held as a matter of Alabama constitutional law that this "Batson
test" would be applied retroactively to cases pending on direct appeal.' Ex parte Penn, 539 So.2d 319, 320 (Ala. 1987). See also Ex parte Love, 507 So.2d 979, 980 (Ala. 1987) (Batson should not be applied retroactively on collateral review of convictions that became final prior to its announcement); Ex parte Dorsey, 545 So.2d 106
(Ala. 1989) ('We hold that in pre-Batson cases, the issue must have been raised in order to be preserved for review.'). 'In Griffith v. Kentucky, [479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649
(1987)], the Supreme Court addressed the retroactive application of Batson, and held that Batson would apply to all cases that were still pending on direct appeal and were not "final" at the time Batson was decided.' Ex parte Floyd, 571 So.2d 1234, 1236 (Ala. 1990) (footnote omitted)."
Guthrie v. State, 598 So.2d 1013, 1018 (Ala.Cr.App. 1991), cert. denied, 598 So.2d 1020 (Ala. 1992).
Therefore, this Court has no alternative but to remand this cause to the circuit court with directions that that court conduct an evidentiary hearing and apply the principles stated in J.E.B. v. Alabama to the particular facts of this case. In determining whether gender discrimination is present, the trial judge shall apply the basic mechanics of Batson and Ex parteBranch, 526 So.2d 609 (Ala. 1987): The challenging party, here the appellant, has the burden of establishing a prima facie case of gender discrimination on the part of the prosecutor. If the appellant establishes a prima facie case, the burden then shifts to the prosecutor, who must advance gender-neutral explanations for its strikes. The appellant may then seek to rebut one or more of the explanations by showing that the explanation is actually a sham or pretext. If the prosecutor fails to offer sufficiently gender-neutral reasons for the challenged strikes, or if the appellant successfully shows that the reasons advanced are a sham or pretext, the trial court must take some form of corrective action. See Ex parte Bird,594 So.2d 676 (Ala. 1991). In this case, the only corrective action available to the trial judge, since the appellant has already been convicted, is to set aside the appellant's conviction and grant the appellant a new trial.
The trial court shall conduct the hearing and enter written findings of fact and conclusions of law. A return, which should include a transcript of the hearing and the written order of the trial court, shall be made to this Court within 120 days from the date of this opinion.
 V
The appellant asserts that the trial court erred by refusing to disclose to the appellant the contents of the records of the Department of Human Resources concerning the victim.
Prior to trial, the appellant filed a motion seeking the production of certain records of the Department of Human Resources. C.R. 18. The appellant also requested that the trial judge review those records and order the production of any exculpatory evidence *Page 149 
contained therein. Supp.R. A at 19 (court reporter's transcript).
In granting one of the appellant's motions to supplement the record, the trial judge entered a written order which stated, in part:
 "The Court conducted an in camera review of the DHR records pertaining to the DHR investigation of the sexual abuse of [S.P.], upon which incident the indictment in this case is based. The Court concluded that there was no exculpatory evidence contained in the DHR records. Therefore, the Court did not disclose the DHR records or any of their contents to defense counsel at trial. Defendant's trial counsel was informed of the court's ruling at the commencement of the trial." Supp.R. II at 5.
In Coats v. State, 615 So.2d 1260, 1261 (Ala.Cr.App. 1992), this Court stated:
 "[U]nder our holdings in Russell v. State, 533 So.2d 725, 726-28 (Ala.Cr.App. 1988), Cure v. State, 600 So.2d 415 (Ala.Cr.App.) (and cases cited therein at 418), cert. denied, 600 So.2d 421
(Ala. 1992), and Jordan v. State, 607 So.2d 333
(Ala.Cr.App. 1992), which adopted the principles set forth in Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), an appellant is entitled, upon request, to have the trial court conduct an in camera review of the victim's complete file maintained by DHR in order to determine whether that file contains any exculpatory information. See also Thornton v. State, 527 So.2d 143, 144-45 (Ala.Cr.App. 1987), cert. quashed, 527 So.2d 146 (Ala. 1988)." (Emphasis in original.)
Our review of the DHR records that were placed under seal reveals that those records include the notes taken by the social worker during her investigation of the allegations of sexual abuse. Those notes contain no exculpatory information. We therefore find the appellant's argument regarding the trial court's review of this material to be without merit.
 VI
The trial court instructed the jury as follows:
 "When Mr. Allen came into the courtroom, he came in with a presumption of innocence and he will remain with that presumption of innocence until you go to deliberate and decide on what your verdict is in this case. This presumption of innocence is to be considered by you as evidence in favor of the defendant and it should be your endeavor to reconcile all of the facts with this presumption of innocence if you can." R. 506-07 (emphasis added).
Out of the presence of the jury, defense counsel objected and the following occurred:
 "MR. HUDDLESTON [defense counsel]: Okay. Then, Your Honor, in one, I think, he was speaking extemporaneously, well, on two occasions. He said that the presumption of innocence will follow Mr. Allen and until you go the jury room to deliberate period.
 "MR. RAINES [assistant district attorney]: I'm sorry.
 "MR. HUDDLESTON: I think, Your Honor said that presumption of innocence will remain with Mr. Allen until you go to the jury room to deliberate period. Mischaracterization of the law and I would object to that instruction and move for a mistrial on that basis.
 "THE COURT: Mr. Raines, do you want to respond to that?
 "MR. RAINES: It was my understanding, Judge, you said it will also follow him back in the room when you begin deliberation.
 "THE COURT: I think I read it right off of my — if you would like for me to do a curative instruction to the jury and bring them back in to make certain that they were told?
 "MR. HUDDLESTON: Whatever the court deems appropriate.
 "MR. RAINES: I thought you already [said] that, Judge, I made a note, the defendant comes into court with the presumption of innocence and the presumption is with defendant is what I put down indicating it stays with [them] when they go back. I was taking notes throughout your deliberations [sic]. It was me and *Page 150 
Karol's understanding that those instructions were read to them.
 "THE COURT: Well, then I'm going to deny your motion for a mistrial on that basis, Mr. Huddleston.
 "MR. HUDDLESTON: Yes, ma'am." R. 525-26 (emphasis added).
Based upon the response of defense counsel to the trial judge's offer to give a curative instruction to the jury, this Court finds that his objection to the trial court's instructions was waived. The appellant cannot now complain that the judge did not cure an allegedly erroneous instruction when defense counsel relinquished the decision of whether to give any further instruction to the discretion of the trial judge.
 VII
The appellant asserts that the State improperly bolstered the testimony of its witness with hearsay testimony from a social worker as to what her investigation revealed.
At trial, the State presented testimony that both victims were sexually abused by the appellant while they were riding on a tractor with the appellant. Each victim testified that he or she did not know the other victim. R. 154, 282.
Brenda Perry, a social worker with the Department of Human Resources, investigated the allegations of sexual abuse involving S.P. and A.C. On the prosecutor's direct examination of Ms. Perry, the following occurred:
 "Q. At that point as you have conducted your two interviews [of the victims] have you received any knowledge that [A.C.] and [S.P.] knew or discussed these events? "MR. HUDDLESTON [defense counsel]: Your Honor, I would object on the basis that would call for hearsay.
"THE COURT: Overruled.
 "A. (BY THE WITNESS) Would you restate your question?
 "Q. (BY MR. RAINES [assistant district attorney]: At this point, you've heard [A.C.] make an allegation about a tractor and you've heard [S.P.] make an allegation about the tractor, at this point have you been able to determine whether [A.C.] and [S.P.] knew one another and discussed these incidents on the tractor or whether they didn't know one another when these things were alleged?
"MR. HUDDLESTON: Same objection.
"THE COURT: Overruled.
 "A. (BY THE WITNESS) My investigation revealed that they did not know each other." R. 298-99.
Here, there was no proper objection to Ms. Perry's testimony. See Thompson v. State, 347 So.2d 1384, 1387 (Ala.Cr.App.), cert. denied, 347 So.2d 1388 (Ala. 1977). The trial judge properly overruled defense counsel's objection because the question did not call for a statement of what the witness's investigation revealed. The prosecutor asked only if the witness had been able to determine whether the victims knew one another. The witness's answer was not responsive to the question asked and constituted hearsay. See Ex parte Anonymous,502 So.2d 1215, 1216 (Ala. 1987), adopting Judge Bowen's dissent in Anonymous v. State, 502 So.2d 1211, 1215 (Ala.Cr.App. 1986) (" '[i]t has been the settled rule in our jurisdiction that the reports of investigating officers are not admissible in evidence, as being hearsay' "). See also Carson v. EmployersCas. Co., 51 Ala. App. 90, 99, 282 So.2d 913 ("We know of no exception to this rule which allows an agent employed for the purpose of making an investigation to state his conclusions or opinion reached as a result of such investigation. Furthermore, this question calls for a simple yes or no answer, which answer would shed no light on whether the insured property was actually stored at Huntsville Moving and Storage Company."), cert. denied, 291 Ala. 510, 282 So.2d 923 (1973).
 "If the question does not call for inadmissible evidence, but the answer includes inadmissible material, counsel must make a motion to exclude the objectionable portion of the answer. The motion should be made at the time of the answer."
J. Colquitt, Alabama Law of Evidence § 1.3(a) at 8-9 (1990) (footnote omitted). See also C. Gamble, McElroy's AlabamaEvidence § 426.01(3) at 958 (4th ed. 1991). *Page 151 
Additionally, the objection at trial was made "on the basis that [the question] would call for hearsay." The appellant now objects on the ground that the hearsay was used to improperly bolster the credibility of the witness. "The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial." B.A.S.S. Coal Inc. v. Black WarriorMinerals, Inc., 579 So.2d 1325, 1327 (Ala. 1991) (quoting Exparte Frith, 526 So.2d 880, 882 (Ala. 1987)).
Furthermore, any error in the admission of Ms. Perry's testimony was subsequently rendered harmless. After Ms. Perry had testified, Baldwin County Sheriffs Deputy John Stewart testified that the appellant had told him that "[t]o his knowledge they wouldn't know each other." R. 311. The appellant testified that he "didn't think" that the victims would know one another but that he "d[idn't] know." R. 376-77.
 " 'The rule is that testimony apparently illegal upon admission may be rendered prejudicially innocuous by subsequent legal testimony to the same effect or from which the same facts can be inferred.' Yelton v. State, 294 Ala. 340, 342, 317 So.2d 331 (1974). 'It is not error to allow the same facts to be again shown against objection when they have already been proven without objection.' Bush v. State, 282 Ala. 134, 139, 209 So.2d 416
(1968)."
Thomas v. State, 520 So.2d 223, 225 (Ala.Cr.App. 1987).
For the reason stated in Part IV of this opinion, this cause is remanded with directions.
REMANDED WITH DIRECTIONS.
All Judges concur.
[1] After the trial judge had sustained defense counsel's objection to the prosecutor's questions of the appellant on cross-examination, defense counsel did request that the trial judge make inquiry and instruct the jury if any juror had overheard the objection or comments that had been made at a "bench conference." R. 313. The trial judge did so and instructed the jury that "if you did happen to overhear anything, please disregard it altogether." R. 313.
[2] "Single" as an explanation for a strike is "in the same 'highly suspect' category as 'age.' " Christianson v. State,601 So.2d 512, 515 (Ala.Cr.App. 1992). However, where the prosecution struck all single veniremembers, the strikes have been upheld. Whitehead v. State, 608 So.2d 423, 428
(Ala.Cr.App. 1992).
[3] See Ex parte Bankhead, 625 So.2d 1146, 1147 n. 2 (Ala. 1993);Rheaume v. State, 624 So.2d 678, 680 (Ala.Cr.App. 1993), and cases cited therein.